[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-12378

_____

D.C. Docket No. 1:11-cv-20858-MGC

MITCHEL A. INSIGNARES,

Petitioner–Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

Respondent–Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 23, 2014)

Before MARCUS and FAY, Circuit Judges, and HODGES,[*] District Judge.

PER CURIAM:

_____

[*] Honorable Wm. Terrell Hodges, United States District Judge for the Middle District of Florida, sitting by designation.

Mitchel A. Insignares, a Florida prisoner, appeals the district judge's denial of his pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254.[1] Because resentencing by the state judge resulted in a new judgment, making this the first challenge to that new judgment, we conclude Insignares's petition is not successive. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A. Underlying Conviction

In the early morning hours of July 5, 2000, Antonio Houed left the Pink Pony, a Miami strip club, to return to his house. When he arrived home, he noticed a man, later identified as Insignares, had followed him in a red car. Insignares confronted Houed, ordered him to get on the ground, and threatened him with a gun. When Houed did not comply, Insignares shot at him four times. Houed took refuge behind a car, and Insignares fired another six or seven shots. Houed eventually was able to escape, while Insignares left to commit crimes against other victims.[2]

Houed testified that he had described the attacker to police as weighing between 250 and 300 pounds, being 6 feet, 1 inch to 6 feet, 2 inches tall, and having a goatee and gold teeth. He also told police the attacker was wearing a

---

[1] Insignares's petition and initial appeal were pro se, but we appointed counsel for this appeal to assist in determining whether his petition is "second or successive." 28 U.S.C. § 2244(b).

[2] The charges for the other crimes were severed and are not concerned in this habeas petition.

2

white shirt, black shorts, and a hood.  Based on that description, police contacted Houed to identify the attacker later that morning.  He identified Insignares on sight.  Houed also recognized a red Mitsubishi Galant owned by Gloria Insignares, Insignares's mother, as the car the attacker had used.

Houed's description was not the only evidence identifying Insignares.  Luis Correa was working as a bouncer at the Pink Pony on the morning of July 5, 2000.  The manager told Correa to keep an eye on a suspicious man at the club.  Correa testified that the man was wearing a white t-shirt and dark shorts, and he appeared to be more interested in the patrons of the club than the dancers.  At his manager's direction, Correa recorded the license-plate number for the car in which the man left.  Correa testified to the license-plate number, which police later determined was registered to Gloria Insignares's car; he further stated the car he saw at the Pink Pony was a red or burgundy Mitsubishi Galant.

Insignares's defense at trial was mistaken identity.  He contended there was insufficient evidence linking him to the crimes.  He challenged the testimony of Correa and argued Correa's recall of the license-plate number from memory at trial, fourteen months later, was not credible.  He also questioned why the victim did not tell police immediately the make and model of the car, and he suggested Houed's testimony was biased by anger.

3

The jury found Insignares guilty on all counts.  He was convicted of (1) attempted first-degree murder with a firearm, Fla. Stat. §§ 775.087, 777.04(1), 777.011, 782.04(1), resulting in a sentence of 40 years of imprisonment, including a 20-year mandatory minimum; (2) criminal mischief, Fla. Stat. § 806.13(1)(b)3, resulting in a sentence of 5 years of imprisonment; and (3) discharging a firearm in public, Fla. Stat. §§ 775.087, 790.15(1), resulting in a sentence of 1 year of imprisonment.  These sentences ran concurrently.

B. State Direct and Post-Conviction Review

On February 14, 2002, Insignares filed a post-conviction motion to correct his sentence under Florida Rule of Criminal Procedure 3.800.  The state judge resentenced Insignares by reducing his 40-year imprisonment sentence for attempted murder to 27 years and replacing his 1-year imprisonment sentence for discharging a firearm with a 5-year suspended imprisonment sentence.  These sentences remained concurrent.

On direct appeal, the state appellate court reversed Insignares's criminal-mischief conviction but otherwise affirmed.  *Insignares v. State*, 847 So. 2d 1063, 1064 (Fla. Dist. Ct. App. 2003) (per curiam).  The appellate court's mandate issued on July 14, 2003.  On August 18, 2003, the state judge vacated the criminal-mischief conviction.

4

On May 25, 2004, Insignares filed a collateral challenge to his conviction under Florida Rule of Criminal Procedure 3.850 and alleged ineffective assistance of trial counsel.  Relevant to this appeal, Insignares alleged his trial counsel was ineffective for failing to (1) depose Correa, (2) colloquy a sleeping juror, and (3) object or move for a mistrial after improper statements by the prosecutor during his closing argument.  He additionally alleged cumulative error.  On post-conviction review, the state judge held an evidentiary hearing and denied the motion.  The appellate court affirmed.  *Insignares v. State*, 957 So. 2d 680 (Fla. Dist. Ct. App. 2007).  The appellate court's mandate issued on May 18, 2007.

C. First Federal Habeas Petition and Additional State Review

On December 12, 2007, Insignares filed his first federal habeas petition under § 2254 in the Southern District of Florida.  Notably, he alleged the same errors in his 2007 petition as he has in his second federal habeas petition, the subject of this appeal.  The district judge dismissed his petition as untimely.  Without seeking a Certificate of Appealability ("COA"), Insignares appealed the dismissal.  We dismissed that appeal for failure to prosecute.  *Insignares v. Fla. Dep't of Corr.*, No. 08-15529 (11th Cir. Oct. 22, 2008).

On April 1, 2009, Insignares filed a second Florida Rule 3.800 motion to correct his sentence.  The state judge granted the motion and reduced the mandatory-minimum imprisonment sentence for his attempted-murder conviction

5

from 20 years to 10 years, but he otherwise left his conviction and sentence intact. The judge entered the corrected sentence and new judgment on May 22, 2009.

On June 15, 2009, Insignares filed a second Florida Rule 3.850 motion challenging his conviction and alleged actual innocence. The state judge denied the petition; the appellate court affirmed without opinion. *Insignares v. State*, 50 So. 3d 1146 (Fla. Dist. Ct. App. 2010) (per curiam). The mandate issued on January 24, 2011.

D. <u>Second Federal Habeas Petition</u>

On March 10, 2011, Insignares filed the § 2254 habeas petition at issue in this appeal. The petition was referred to a magistrate judge, who construed the petition as raising ten claims, which he rejected in a Report and Recommendation ("R&R"). The magistrate judge concluded the habeas petition was not "second or successive" under *Magwood v. Patterson*, 561 U.S. 320, 130 S. Ct. 2788 (2010), because it was Insignares's first petition to challenge the new judgment entered after resentencing. R&R at 27. The district judge adopted the R&R and issued a COA as to whether (1) counsel was ineffective for failing to investigate, depose, and adequately impeach Luis Correa; (2) counsel was ineffective for failing to colloquy and remove a sleeping juror pursuant to Insignares's request; (3) counsel was ineffective for failing to object to the prosecutor's misrepresentation of facts crucial to the issue of identification and move for mistrial after the prosecutor

6

commented on his opinion of the evidence; and (4) cumulative error deprived Insignares of a fair trial.

## II. JURISDICTION

Before addressing the merits of Insignares's habeas petition, we first must decide whether the district judge had jurisdiction to decide it.  Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No.104-132, 110 Stat. 1214, a prisoner "in custody pursuant to the judgment of a State court," 28 U.S.C. § 2254(a), "shall move in the appropriate court of appeals for an order authorizing the district court to consider" a "second or successive" federal habeas petition.  28 U.S.C. § 2244(b)(3)(A); *Burton v. Stewart*, 549 U.S. 147, 152, 127 S. Ct. 793, 796 (2007).  Subject to exceptions not present in this case, a district judge lacks jurisdiction to decide a second or successive petition filed without our authorization.[3]  Insignares did not seek permission to file a successive petition.  Therefore, the district judge had jurisdiction to hear his petition only if Insignares's application was not second or successive.

Because Insignares had filed a federal habeas petition in 2007 challenging his conviction and raising the same issues as his 2011 federal habeas petition, the state argues his second petition is successive.  Insignares responds that, although he filed a 2007 federal petition, the reduction of his mandatory-minimum sentence

---

[3] *See, e.g.*, *Panetti v. Quarterman*, 551 U.S. 930, 945, 127 S. Ct. 2842, 2853 (2007) (describing an exception to AEDPA's bar on claims in successive petitions).

in 2009 resulted in a new judgment. He contends the 2011 federal habeas petition is his first challenge to that new judgment; consequently, it is not "second or successive." Appellant's Br. at 3-5. We agree with Insignares.

In *Magwood*, the Supreme Court decided whether a habeas petition challenging a state prisoner's sentence after intervening resentencing was "second or successive." 561 U.S. 320, 130 S. Ct. 2788. The state prisoner in *Magwood* had been convicted of murder and sentenced to death. *Id.* at 324, 130 S. Ct. at 2792. On initial federal habeas review, the district judge did not disturb the conviction but conditionally granted the petition concerning the death sentence. *Id.* at 326, 130 S. Ct. at 2793. The state trial judge resentenced the prisoner and imposed another death sentence. *Id.* The prisoner again sought federal review of his sentence, but he brought a new claim that alleged his sentence was unlawful, because he did not have fair warning he could be sentenced to death. *Id.* at 327, 130 S. Ct. at 2794. The district judge conditionally granted the new petition, but this court determined his petition should have been dismissed as second or successive, because the fair-warning claim could have been raised in his first federal habeas petition. *Id.* at 329, 130 S. Ct. at 2794–95. The Supreme Court granted certiorari to decide whether resentencing in response to a conditional habeas writ subjects petitions challenging the new sentence to AEDPA's restrictions on successive federal habeas petitions. *Id.* at 330, 130 S. Ct. at 2795.

8

Based on AEDPA's language and context, the Court concluded that courts must look to the *judgment* challenged to determine whether a petition is second or successive.  AEDPA does not define the phrase "second or successive."  *Id.* at 331-32, 130 S. Ct. at 2796.  Although § 2244(b) prohibits certain claims from being heard in a second or successive application, that provision does not define what it means for an application to be second or successive.[4]  To determine the meaning of this "term of art," the Court looked instead to § 2254(b)(1).  *Id.* at 332, 130 S. Ct. at 2797 (citation and internal quotation marks omitted).  Quoting the statute, the Court noted that "[t]he limitations imposed by § 2244(b) apply only to a 'habeas corpus application under § 2254,' that is, an 'application for a writ of habeas corpus on behalf of a person in custody pursuant to *the judgment* of a State court,' § 2254(b)(1)."  *Id.*[5]  In accordance with AEDPA, the Court recognized a habeas application seeks invalidation "'*of the judgment* authorizing the prisoner's confinement,'" and, even if the application is successful, "'the State may seek a *new* judgment.'"  *Id.* (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 83, 125 S. Ct. 1242, 1248 (2005)).  Therefore, the judgment is the center of the analysis, "both

---

[4] Subject to two exceptions, § 2244(b) provides that "[a] claim presented in a second or successive habeas corpus application under section 2254 . . . shall be dismissed."  28 U.S.C. § 2244(b).

[5] Section 2254(b)(1) provides that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to *the judgment* of a State court shall not be granted unless it appears that" the applicant has exhausted the remedies available in the state courts, there is an absence of available state corrective process, or circumstances exist that make the process ineffective to protect the applicant's rights.  28 U.S.C. § 2254(b)(1) (emphasis added).

§ 2254(b)'s text and the relief it provides indicate that the phrase 'second or successive' must be interpreted with respect to the judgment challenged." *Id.* at 332-33, 130 S. Ct. at 2797.

The Supreme Court also clarified that the phrase "second or successive" applies to habeas *petitions*, not to the *claims* they raise. On appellate habeas review in *Magwood*, this court had "concluded that the first step in determining whether § 2244(b) applies is to 'separate the new claims challenging the resentencing from the old claims that were or should have been presented in the prior application.'" *Id.* at 329, 130 S. Ct. at 2795 (quoting *Magwood v. Culliver*, 555 F.3d 968, 975 (11th Cir. 2009)). The Supreme Court interpreted our decision as stating that "any claim that 'challenge[s] the new, amended component of the sentence' should be 'regarded as part of a first petition,' and any claim that 'challenge[s] any component of the original sentence that was not amended' should be 'regarded as part of a second petition.'" *Id.* (quoting *Culliver*, 555 F.3d at 975) (alterations in original). Since Magwood's fair-warning claim could have been raised in his previous petition, we concluded that the claim was governed by AEDPA's bar on second or successive habeas applications. *Id.* Rejecting this claim-based approach, the Court reversed. *Id.* at 334-35, 130 S. Ct. at 2798. It stated that "although we agree with the State that many of the rules under § 2244(b) focus on claims, that does not entitle us to rewrite the statute to make the

10

phrase 'second or successive' modify claims as well." *Id.* Therefore, the Court explained that "the phrase 'second or successive' applies to an *application* as a whole" and rejected the argument that there are "second or successive" *claims* under § 2244(b). *Id.* at 334-35 & n.10, 130 S. Ct. at 2798 & n.10.

Based on this analysis, the Court concluded that "AEDPA's text commands a more straight-forward rule: where . . . there is a new judgment intervening between the two habeas petitions, an application challenging the resulting new judgment is not second or successive." *Id.* at 341-42, 130 S. Ct. at 2802 (citation and internal quotation marks omitted). Throughout its opinion, the Court emphasized the effect of a new judgment. "Because Magwood's habeas application challenge[d] a new judgment for the first time, it [was] not 'second or successive' under § 2244(b)." *Id.* at 323-24, 130 S. Ct. at 2792 (footnote omitted). The Court agreed with Magwood that § 2244(b) "appl[ies] only to a 'second or successive' application challenging the same state-court *judgment*." *Id.* at 331, 130 S. Ct. at 2796. Since his petition was his "*first* application challenging [an] intervening judgment," it was not "second or successive," regardless of whether he had raised the claims before. *Id.* at 336, 339, 130 S. Ct. at 2799, 2801. Put simply, the first application to challenge a judgment is not subject to AEDPA's restrictions on successive petitions—"the existence of a new judgment is dispositive." *Id.* at 338, 130 S. Ct. at 2800.

11

The wrinkle in *Magwood* is that the Court expressly reserved the question of whether a subsequent petition challenging the undisturbed *conviction* would be "second or successive" after the state imposes only a new *sentence*. *Id.* at 342, 130 S. Ct. at 2802. That is the question we must decide.

Our sister circuits have addressed variations of this issue. The Second, Fifth, and Ninth Circuits have considered whether vacating one count of a multi-count conviction results in a new judgment that allows a renewed challenge to the other counts. The Second and Ninth Circuits held it does result in a new judgment,[6] but the Fifth Circuit held it does not.[7] In addition, the Second and Ninth Circuits concluded that the petitions were not successive even though they challenged unamended portions of the judgment. Those cases, however, involved different facts from those we have in this case.

The only circuit that has addressed the precise question we confront is the Seventh Circuit. *Suggs v. United States*, 705 F.3d 279 (7th Cir. 2013). That court concluded resentencing in district court did not allow the prisoner to challenge his

---

[6] *See Johnson v. United States*, 623 F.3d 41, 46 (2d Cir. 2010) ("Johnson's proposed § 2255 motion [is] not . . . successive because it is his first § 2255 motion challenging the amended judgment of conviction. A different result is not warranted by the fact . . . that he effectively challenges an unamended component of the judgment." (footnote omitted)); *Wentzell v. Neven*, 674 F.3d 1124, 1127 (9th Cir. 2012) ("Although the Court had 'no occasion to address' the precise scenario this case presents, we conclude, as a matter of first impression, that the basic holding of *Magwood* applies here: the latter of two petitions is not 'second or successive' if there is a 'new judgment intervening between the two habeas petitions.'" (citations omitted)).

[7] *See In re Lampton*, 667 F.3d 585, 589–90 (5th Cir. 2012) ("The district court did not enter an amended judgment of conviction in this case. No new sentence was imposed. The less fundamental change made to Lampton's judgment of conviction is not enough to allow him to bypass AEDPA's restrictions on piecemeal habeas litigation.").

underlying conviction again without first seeking authorization to file a second petition. *Id.* at 280–81. But the Seventh Circuit did not reach this conclusion by writing on a clean slate. The court instead looked to pre-*Magwood* precedent, which held habeas petitions "are not second or successive when they allege errors made during the resentencing, but they are second or successive when they challenge the underlying conviction." *Id.* at 282 (citing *Dahler v. United States*, 259 F.3d 763 (7th Cir. 2001)). The Seventh Circuit further reasoned that, because *Magwood* expressly declined to decide the issue, its prior precedent was not overruled. *Id.* at 284.[8]

Neither do we write on a clean slate. We have addressed the effect of resentencing on AEDPA's statute of limitations. *Ferreira v. Sec'y, Dep't of Corr.*, 494 F.3d 1286 (11th Cir. 2007). The prisoner in *Ferreira* had been resentenced by the state trial judge and sought federal review of his underlying conviction. *Id.* at 1288. The issue was whether resentencing rendered timely his otherwise untimely challenge to the conviction. *Id.* Prior to *Ferreira*, we viewed the conviction and sentence as two separate judgments, each with its own statute of limitations. Responding to the Supreme Court's decision in *Burton*, which ruled AEDPA's statute of limitations "[does] not begin until both [the] conviction *and* sentence

---

[8] A vigorous dissent contended that, although *Magwood* did not answer the precise question in *Suggs*, it expressly rejected the claims-based approach of the circuit precedent. *See Suggs*, 705 F.3d at 287 (Sykes, J., dissenting).

'bec[o]me final,'" *Burton*, 549 U.S. at 156, 127 S. Ct. at 799, we overruled our incorrect understanding of separate judgments of conviction and sentence. *Ferreira*, 494 F.3d at 1293.

In *Ferreira*, we explained there is one judgment, comprised of both the sentence and conviction. *Id.* at 1292 ("[T]he judgment to which AEDPA refers is the underlying conviction and most recent sentence that authorizes the petitioner's current detention."); *cf. Deal v. United States*, 508 U.S. 129, 132, 113 S. Ct. 1993, 1996 (1993) ("A judgment of conviction includes both the adjudication of guilt and the sentence."). Applying that rule, we held "that AEDPA's statute of limitations runs from the date the judgment pursuant to which the petitioner is in custody becomes final, which is the date both the conviction *and* sentence the petitioner is serving become final." *Ferreira*, 494 F.3d at 1288. The limitations provisions of AEDPA "are specifically focused on the judgment which holds the petitioner in confinement," and resentencing results in a new judgment that restarts the statute of limitations. *Id.* at 1292–93. Since there was a new judgment, we saw no reason to differentiate between a claim challenging a conviction and one challenging the sentence.

Having reviewed *Magwood* and the cases of other circuits, we return to the basic proposition underlying *Burton* and *Ferreira*: there is only one judgment, and it is comprised of both the sentence and the conviction. In *Ferreira*, resentencing

14

by the state judge resulted in a new judgment.  *Magwood* explains, the "existence of a new judgment is dispositive" in determining whether a petition is successive. 561 U.S. at 338, 130 S. Ct. at 2800.  Based on these cases, we conclude that when a habeas petition is the first to challenge a new judgment, it is not "second or successive," regardless of whether its claims challenge the sentence or the underlying conviction.[9]

Insignares's first federal habeas petition was decided in 2008.  In 2009, the state judge granted a motion to reduce Insignares's mandatory-minimum imprisonment sentence from 20 years to 10 years but retained his 27-year imprisonment sentence.  The 2009 resentencing by the state judge resulted in a new judgment, and the 2011 petition is his first federal challenge to that 2009 judgment.  Therefore, Insignares's 2011 petition is not "second or successive," and the district judge had jurisdiction to decide it.

---

[9] While such a petition is not subject to AEDPA's restrictions on "second or successive" petitions, AEDPA's other limitations still apply.  For example, "[a] petitioner may not raise in federal court an error that he failed to raise properly in state court in a challenge to the judgment reflecting the error."  *Magwood*, 561 U.S. at 340, 130 S. Ct. at 2801.  Moreover, previously decided claims may be foreclosed by the law-of-the-case doctrine.  *See Transamerica Leasing, Inc. v. Inst. of London Underwriters*, 430 F.3d 1326, 1331 (11th Cir. 2005) ("'Under the "law of the case" doctrine, the findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal.'" (quoting *Heathcoat v. Potts*, 905 F.2d 367, 370 (11th Cir. 1990) (per curiam)).

## III. DISCUSSION

Because Insignares's petition is not second or successive, we progress to the merits of the COA: his Sixth Amendment claims of ineffective assistance of counsel and his claim of cumulative error. Insignares argues his trial counsel was ineffective for failing to: (1) investigate, depose, and adequately impeach Correa; (2) colloquy and remove a sleeping juror; and (3) object to the prosecutor's misrepresentation of facts in his closing argument.

To establish ineffective assistance of counsel, Insignares must show (1) trial "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). Trial counsel's performance is deficient if it is incompetent "under prevailing professional norms." *Id.* at 688, 104 S. Ct. at 2065. There is a strong presumption that counsel's performance may be considered trial strategy; strategic choices are "virtually unchallengeable." *Id.* at 689–90, 104 S. Ct. at 2065–66. Prejudice is the reasonable likelihood of a different result. *Id.* at 696, 104 S. Ct. at 2069. But "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 131 S. Ct. 770, 792 (2011).

We must review with considerable deference the state judge's determination regarding whether counsel was ineffective. *Ferrell v. Hall*, 640 F.3d 1199, 1224 (11th Cir. 2011). Under AEPDA, when a claim previously has been adjudicated

16

by a state judge, we may grant relief only if the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or if the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). When a claim implicates both AEDPA and *Strickland*'s highly deferential standards, our review is "doubly" deferential. *Harrington*, 131 S. Ct. at 788. "The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* Even if a state judge's decision is unaccompanied by an explanation, the habeas petitioner can meet his burden only if there was "no reasonable basis" for the judge's denial of relief. *Id.* at 784.

A. <u>Failure to Investigate, Depose, and Adequately Impeach Correa</u>

Correa provided evidence identifying Insignares and the car he used for his crimes on July 5, 2000. Insignares alleges Correa had pending criminal cases at the time of the trial.[10] He claims defense counsel's failure to depose and investigate Correa left this information undiscovered and could have been used to show motive, interest, or bias in testifying for the state.

---

[10] Insignares also claimed Correa was a new employee at the Pink Pony. Even if this were true, we do not see how that could have affected Correa's ability to identify Insignares or the car accurately and credibly.

17

Based on the record, the state judge reasonably could have concluded that counsel's efforts with regard to Correa were not deficient. Defense counsel testified at the evidentiary hearing that he does not depose every possible witness prior to trial and that he did not believe Correa was a particularly important witness. Despite foregoing a pre-trial deposition, defense counsel adequately cross-examined Correa at trial about the circumstances of his employment, his opportunity to observe Insignares at the Pink Pony, and his ability to describe accurately the events he witnessed. Insignares has not explained why his counsel's choice was deficient, other than to emphasize Correa was an important witness. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1332–1334 (11th Cir. 2012) (denying a claim for insufficiently detailed allegations). He also has not provided convincing evidence showing that Correa had charges pending during Insignares's trial,[11] nor has he shown that his counsel would have discovered such charges with further investigation.

Even assuming defense counsel was deficient, the state judge reasonably could have found that his performance did not result in prejudice. If Correa's testimony had been discredited, the link between Insignares, the red vehicle, and the offense—merely corroborated by Correa's testimony—was supported by ample other evidence. *See United States v. Andrews*, 953 F.2d 1312, 1327 (11th Cir.

---

[11] The only evidence in the record is vague testimony from a private investigator, who believed Correa may have had an open case at the time of Insignares's trial.

1992) (concluding that defendant failed to show prejudice, when other evidence was sufficient to support the verdict).  Insignares's mother testified that, on the night in question, her son was driving a car of the same make and color as that used in the attack.  In addition, Houed described Insignares's clothing, distinctive physical characteristics, and facial features as well as identified both Insignares and his mother's red car at a show-up and at trial.  We conclude the state judge had a reasonable basis to deny Insignares's claim that his trial counsel was ineffective for failing to investigate, depose, and adequately impeach Correa.

B. Alleged Sleeping Juror

Insignares alleges a juror slept during parts of his trial, including closing arguments and jury instructions.  He contends defense counsel was ineffective for failing to question and remove the sleeping juror.

Defense counsel notified the trial judge that he believed a juror was sleeping during trial.  He also moved for a mistrial.  The judge found that the juror was "nodding," but was still awake, and denied the motion for a mistrial.  *Insignares*, 957 So. 2d at 682.  While Insignares maintains the juror was sleeping, he has not provided clear and convincing evidence rebutting the trial judge's contrary factual finding.  Therefore, we adopt the trial judge's finding that the juror was awake. *See Hunter v. Sec'y, Dep't of Corr.*, 395 F.3d 1196, 1200 (11th Cir. 2005) ("Under . . . AEDPA, state court factual determinations are presumed correct and a federal

19

habeas petitioner is stuck with them unless he can rebut their presumed correctness with clear and convincing evidence to the contrary."). Because the juror was awake, the state judge did not apply *Strickland* unreasonably in rejecting Insignares's claim that counsel was ineffective for failing to question or remove the juror, especially when the trial judge already had denied defense counsel's motion for a mistrial. Moreover, Insignares has not shown that the state judge's decision was based on an unreasonable determination of the facts in view of the evidence presented.

C. Failure to Object to the Prosecutor's Alleged Misrepresentation of Facts

Insignares argues defense counsel was ineffective for failing to object to questionable remarks made by the prosecutor in his closing argument. We address the three remarks in turn.

First, the prosecutor said: "Luis [Correa] was told to get the tag number. He got the tag number . . . it's the only tag number in Dade County that comes back to a Mitsubishi, and he got it." R&R at 45 (quoting Trial Tr. at 434) (alteration in original). Insignares alleges this statement is false, but he has not supported his claim by explaining why the statement is incorrect or why counsel should have objected. *See Boyd*, 697 F.3d at 1332. Construing his argument liberally, Insignares argues the prosecutor falsely told the jury the license-plate number belonged to the only Mitsubishi in Miami-Dade County. But it would have been

plainly clear to a jury from Miami-Dade County that there is more than one Mitsubishi in the county, and the prosecutor simply meant the license-plate number Correa provided was on the Mitsubishi owned by Insignares's mother.  Given the absurdity of a different interpretation, the state judge reasonably could have concluded that defense counsel was not ineffective for failing to object.  *See Duren v. Hopper*, 161 F.3d 655, 662–63 (11th Cir. 1998) (concluding failure to object to prosecutor's allegedly improper comments was not ineffective assistance of counsel, given the context of those comments).

Second, the prosecutor stated: "[Insignares] follows [Houed] out, and that is the home of his first prey."  R&R at 45 (quoting Trial Tr. at 434).  This statement was a reference to the multiple victims of Insignares's subsequent crimes.  The reference was improper, because those other charges were severed.  At the post-conviction evidentiary hearing, however, defense counsel testified he did not object, because it is not prudent to raise every objection at trial.  The state judge reasonably could have concluded that defense counsel's strategic decision not to object did not result in ineffective assistance of counsel.  *See Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *Hunt v. Comm'r, Ala. Dep't of Corr.*, 666 F.3d 708, 726 (11th Cir. 2012).  As the magistrate judge determined, there are many reasons why defense counsel might not object to such a statement, including the objection may draw attention to the statement.  Even assuming the failure to object was deficient,

21

the state judge reasonably could have found that Insignares suffered no prejudice, because an objection to this single statement during the prosecutor's closing argument is not reasonably likely to have changed the outcome.

Third, the prosecutor said: "[Correa] came here.  He told you, I saw [Insignares] and I saw what he did, because this is what happened. . . . [Insignares] did it.  He did it."  R&R at 46 (quoting Trial Tr. at 443, 450) (first alteration in original).  The first statement simply describes Correa's testimony as viewed by the prosecutor, while the second invites the jury to conclude Insignares is guilty.  The state judge had a reasonable basis to decide that counsel was not deficient for failing to raise non-meritorious objections.  *See Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (finding counsel was not ineffective for failing to object to an accurate statement).  These statements to the jury by the prosecutor during his closing argument were not improper.

D. Cumulative Error

Insignares claims cumulative error deprived him of a fair trial.  Under the cumulative-error doctrine, a sufficient agglomeration of otherwise harmless or nonreversible errors can warrant reversal if their aggregate effect is to deprive the defendant of a fair trial.  *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012).  "This court has made clear that where '[t]here [is] no error in any of the [trial] court's rulings, the argument that cumulative trial error requires that

22

this Court reverse [the defendant's] convictions is without merit.'" *Id.* (quoting

*United States v. Taylor*, 417 F.3d 1176, 1182 (11th Cir. 2005) (per curiam))

(alterations in original).  Because we have found no error in the issues on appeal,

Insignares has failed to show that the state judge lacked a reasonable basis to deny

his cumulative-error claim.[12]

   **AFFIRMED.**

---

[12] Insignares argues errors not specified in the COA contributed to the cumulative error.  We do not consider issues outside the COA.  *Jordan v. Sec'y, Dep't of Corr.*, 485 F.3d 1351, 1356 (11th Cir. 2007).

FAY, Circuit Judge, concurring specially:

Although I concur in the court's opinion, I write separately to express some doubt and concern about how we should interpret the opinion of the Supreme Court in *Magwood v. Patterson*, 561 U.S. 320, 130 S. Ct. 2788 (2010). It is clear that *Magwood* does not alter our opinion and holding in *Ferreira v. Secretary, Department of Corrections*, 494 F.3d 1286 (11th Cir. 2007). However, there is language in *Magwood* that indicates to me that the Supreme Court may well take a different tack should it deal with a case like this one. In response to the dissenters, Justice Thomas goes to some lengths to emphasize: "This is Magwood's *first* application challenging that intervening judgment. The errors he alleges are *new*. It is obvious to us—and the State does not dispute—that his claim of ineffective assistance at resentencing turns upon new errors." *Magwood*, 561 U.S. at 339, 130 S. Ct. at 2801. That is not the situation with Insignares. There is nothing new in his petition attacking his new judgment. Instead, he raises exactly the same issues he raised in his earlier application. Consequently, except for the intervening "new judgment," we are dealing in this case with an otherwise clear abuse of the writ.

When the Supreme Court has a case exactly like this one, we will know the answer. Until then, we are bound by our precedent in *Ferreira*.

24