JORDAN, Circuit Judge,
joined by WILSON, MARTIN, ROSENBAUM and JILL PRYOR, Circuit Judges, dissenting:
There are legitimate questions about whether Insignares v. Secretary, Florida Department of Corrections, 755 F.3d 1273 (11th Cir. 2014), correctly applied Magwood v. Patterson, 561 U.S. 320, 130 S.Ct. 2788, 177 L.Ed.2d 592 (2010), as to when there is an intervening judgment under 28 U.S.C. §§ 2244(b) & 2254(b). But if we are going to leave Insignares undisturbed, I “do not see how [that case] and [the majority’s decision here] can coexist.” United States v. Bryan, 339 U.S. 323, 343, 70 S.Ct. 724, 94 L.Ed. 884 (1950) (Jackson, J., concurring). As explained in the now-vacated panel opinion:
A “basic principle of justice [is] that like cases should be decided alike,” Martin v. Franklin Capital Corp., 546 U.S. 132, 139, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005), and [there is] no meaningful distinction between Mr. Insignares’ case and Mr. Patterson’s case. Just as Mr. Insignares’ initial § 2254 petition was dismissed for untimeliness, so too was Mr. Patterson’s initial § 2254 petition. Just as Mr. Insignares filed a motion with the state trial court to correct his illegal sentence under Rule 3.800, so too did Mr. Patterson. Just as the state trial court granted Mr. Insignares’ motion to correct, substantively amending a part of the sentence but leaving Mr. Insig-nares’ remaining convictions and total custodial sentences intact, so too did the state trial court here grant Mr. Patterson’s motion to correct, substantively vacating a portion of the sentence but leaving Mr. Patterson’s remaining convictions and total custodial sentences intact. Just as Mr. Insignares benefitted from the new sentence, so too did Mr. Patterson benefit from the new sentence. And just as the second habeas petition filed by Mr. Insignares asserted claims related to his underlying convictions (and not to the new sentence), so too did the second habeas petition filed by Mr. Patterson assert claims related to his underlying convictions (and not to the new sentence). As in Insignares, the state trial court’s grant of Mr. Patterson’s Rule 3.800 motion and its vacatur of the punishment of chemical castration from the original sentence constituted a resentencing that resulted in a new judgment, even though Mr. Patterson’s total custodial term (life in prison) remained the same, and even though the current habeas corpus petition challenges only the underlying convictions.
Patterson v. Sec’y, Fla. Dep’t of Corr., 812 F.3d 885, 888-89 (11th Cir. 2016) (some language in brackets added). The majority tries valiantly to explain why Insignares does not govern, but its reasons — to the extent one can ascertain them — are unconvincing.
⅜: ⅜ ⅜ ⅜; ⅜ ⅜ ⅜
The majority says that, under Magwood, the only judgment.that authorizes Mr. Patterson’s confinement is the original 1998 judgment, which has never been vacated or replaced. See Maj. Op. at 1325-26. That, I think, is wrong on a number of levels.
*1330 A. criminal judgment (even under AED-PA) consists of the conviction and the sentence. See Burton v. Stewart, 549 U.S. 147, 156-57, 127 S.Ct. 793, 166 L.Ed.2d 628 (2007); Ferreira v. Sec’y, Dep’t of Corr., 494 F.3d 1286, 1292-93 (11th Cir. 2007). Not only has the Supreme Court emphasized the critical role that the sentence plays in a judgment, dictionaries from the time of AEDPA’s enactment confirm this . understanding. See Barron’s Law Dictionary 271 (4th Ed. 1996) (defining “judgment of conviction” as “the sentence in a criminal case formally entered in the clerk’s records”); Black’s Law Dictionary 842 (6th Ed. 1990) (stating that “ ‘sentence’' and ‘judgment’ are synonymous in a criminal action”).
Chemical castration is a criminal punishment under Florida law, see Tran v. State, 965 So.2d 226, 229 (Fla. 4th DCA 2007) (holding that chemical castration, which has been characterized by the Florida Legislature as a penalty, “is part of the defendant’s punishment and sentence”), and the Rule 3.800(a) order (however one wants to characterize it) eliminates that punishment from Mr. Patterson’s sentence. That order constitutes part of Mr. Patterson’s sentence because it substantively changes the way that the Department of Corrections can execute the initial judgment. Everyone but the majority recognizes this reality. '
⅝ # ⅝ ⅜ * # ⅝
Apparently sensing that this first reason is insufficient, the majority pivots,- and says that Insignares is distinguishable because the state trial court in that case, in addition to issuing a Rule, 3.800(a) order, also entered a new judgment. See Maj. Op. at 1325-26. This, essentially, mirrors the position that Florida took at oral argument:
Member of the Court: ... I want to know why you think — and there are various possible answers — but I want to know why you think this is not a new judgment. First, you told me it didn’t change his confinement, and we talked about that. Now you say that Insignares was different and you started on confinement grounds, but now, you say that there was a new piece of paper called a judgment in Insignares, which made all the difference in the world. What is the difference between Insignares and. this case in your opinion?
Counsel for the State: In my opinion, in Insignares, a new judgment and sentence, that is required by the Florida Department of Corrections to have in order to lawfully have someone in their custody exists in Insignares....
Member of the Court: So it’s ... the piece of paper called a judgment?
Counsel for the State: It is the piece of paper that complies with Florida law that says this is the judgment that gives you the authority to hold this person in custody.
Member of the Court: Under that theory ... even if Mr. Patterson doesn’t get relief in this case, someone who is in Mr. Patterson’s exact situation tomorrow, gets a sentence of chemical castration vacated pursuant to a 3.800 order, asks the judge to resentence him or her, gets a full resentencing, gets a new judgment minus the sentence of chemical castration — that person has a new judgment?
Counsel for the State: That is a new judgment.
Member of the Court: So it’s the piece of paper that matters?
Counsel for the State: It is a piece of paper. It really is.
Member of the Court: Got it. Okay. That is your answer? It is the piece of paper that matters.
Counsel for the State: That is my answer.
*1331 Audio of En Banc Oral Argument at 27:59-29:27.
It is true that there was a new formal judgment in Insignares, but that, it seems to me, is irrelevant. First, Florida law does not require that a criminal judgment be in writing. See Patterson, 812 F.3d at 890; Flowers v. State, 351 So.2d 387, 389 (Fla. 1st DCA 1977); Fla. R. Crim. P. 3.700. Second, Florida law indicates that Rule 3.800(a) orders can be tantamount to judgments and have the force of law when — as here — they impose a new sentence and end judicial labor. See Adams v. State, 949 So.2d 1125, 1126-27 (Fla. 3d DCA 2007); State v. Rudolf, 821 So.2d 385, 386 (Fla. 2d DCA 2002); State v. Delvalle, 745 So.2d 541, 542 (Fla. 4th DCA 1999). Accord De La Osa v. Wells Fargo Bank, N.A., So.3d 259, 261-62 (Fla. 3d DCA 2016) (en banc) (explaining the interchangeability of the terms “order” and “judgment” under Florida law).
This, of course, is why the Florida Department of Corrections- acknowledges that it cannot chemically castrate Mr. Patterson. If state officials admit that the Rule 3.800(a) order affects and modifies Mr. Patterson’s initial sentence, i.e., judgment, one is left to wonder why the majority thinks that the order amounts to nothing more than the ineffectual and legally insignificant, musings of a state trial court.
We have been told, time and again, that AEDPA — in both text and spirit — is meant to respect the way that states administer their criminal justice systems. Here, however, the majority is not concerned about the way that Florida law operates. It ignores Florida law holding that chemical castration is a criminal punishment, and refuses to recognize that under Florida law a Rule 3.800(a) order like the one here can have the force of law. And it relegates to the dustbin the Department of Corrections’ concession that, due to the state trial court’s order, it cannot chemically castrate Mr. Patterson. So much for respect.
⅜ ⅜ ⅜ ⅜ ⅞: ⅜ ⅜
If this case is all about a piece of paper, then' we have wasted valuable time and resources in convening en banc. If what matters is a formal paper called a judgment, then all Florida prisoners who obtain a favorable Rule 3.800(a) order striking or vacating part of their initial sentence — i.e., their initial punishment— will simply have the state trial court enter a new judgment setting out the current sentence and incorporate the terms of the Rule 3.800(a) order in the new judgment. That sort of a judgment, apparently, will suffice under Magwood.
The majority nevertheless suggests that Florida law may not entitle every prisoner who obtains Rule 3.800(a) relief to a new paper judgment. See Maj. Op. at 1327. But this suggestion should not be taken seriously, for the majority does not identify a principle of Florida law to support its theory. It offers only that the correction of a clerical error is an example of a situation in which a change “relates back” to the original sentence so as to not require the court to enter a new judgment. This cáse, of course, does not involve the correction of a clerical error, so the majority’s example is not helpful.
Even the majority does not really believe that this case turns on whether there is a new piece of paper called a judgment, for it provides yet another reason for its holding. According to the majority, the Rule 3.800(a) order does not affect Mr. Patterson’s confinement because it “does not authorize anything.” Maj. Op. at 1326. The majority says this confidently, even though it recognizes that the Florida Department of Corrections must read the 1998 judgment together with the Rule 3.800(a) order to “determine the scope of [Mr.] Patterson’s confinement.” Id. In *1332 Magwood, the Supreme Court rejected the state’s argument that custody is the critical concept in determining whether a habe-as corpus petition is second or successive, see 561 U.S. at 333-34, 130 S.Ct. 2788 (explaining that the “judgment” is what matters), yet here the majority seems to give primacy to custody, and bases its decision on whether the Rule 3.800(a) order gives the Department of Corrections the power to confine Mr. Patterson. I do not know why the majority thinks that the rationale in Magwood can be jettisoned like driftwood.
* * * * * * *
The majority analogizes to an order which corrects a clerical error, see Maj. Op. at 1326-27, which we have indicated does not constitute a new judgment under the Federal Rules of Appellate Procedure. See United States v. Portillo, 363 F.3d 1161, 1165-66 (11th Cir. 2004). But the majqrity is setting up the proverbial straw man, because there is no way anyone can say that an order which prohibits the substantive punishment of chemical castration is in any way clerical.
Indeed, it is the majority’s position that may one day cause a conflict with cases like Portillo. Imagine a case in which a Florida court sentences a defendant to a term of 10 years, but then issues a judgment which mistakenly states that the sentence is 100 years. No one notices the error until the defendant has been in custody for 6 years. If the state court issues a new judgment which corrects the clerical error and commits the defendant to the custody of the Department of Corrections for (the correct) 10 years, that will, according to the majority’s apparent rationale, constitute a new judgment under Mag-wood. There will be a new piece of paper— the amended judgment — which will be affirmatively worded, i.e., it will give the Department of Corrections the authority to keep the defendant in custody, and that judgment will set out the length of his confinement.
I prefer the panel’s approach, which looks to see whether the state court corrects a legal error and enters a new sentence that is substantively different than the original sentence. See Patterson, 812 F.3d at 891. It may not be perfect, but it is more faithful to Insignares than what the majority is offering.
⅜ ⅜ ⅜ ⅜ ⅜ ⅝ ⅜
The majority closes .by telling us that, “as a practical matter,” the approach taken by the panel, and endorsed by Mr. Patterson, “might hurt prisoners more than it helps.” Maj. Op. at 1327. In and of itself, the majority’s prediction about the consequences of today’s decision is neither surprising nor inappropriate. Courts often have to consider the practical effects of the principle they are adopting. What is remarkable is the reason the majority believes its decision is prisoner-friendly.
According to the majority, if the panel approach prevails, “then state officials would be less willing to agree to sentencing changes that benefit prisoners, and state courts would be more hesitant to approve them.” Id. I do not understand. Here, for example, the prosecution conceded error (and the state trial court granted Rule 3.800(a) relief) because Florida law makes it clear that the punishment of chemical castration was improperly imposed. See Houston v. State, 852 So.2d 425, 428 (Fla. 5th DCA 2003).
What the majority seems to be saying is that, in order to preclude a new round of federal habeas corpus proceedings for state prisoners under Magwood, state prosecutors may not concede that a sentence has been illegally imposed even though state law on the subject is clear, and that state courts may decline to correct a sentence that is undoubtedly illegal *1333 under state law even though it is their duty to do so. In other words, state prosecutors and state courts will bend (or ignore) state law in order to achieve the purportedly desirable goal of limiting the access of state prisoners to further federal habeas corpus review.
The majority’s underlying assumption— which I do not share — is as odd as it is disconcerting. See Patterson, 812 F.3d at 895 (Haikala, J., concurring) (“The notion that a trial judge would refrain from correcting a sentencing error that all of the parties have acknowledged ... to avoid a potential habeas petition is repugnant to the judicial office.”). If the majority is right, however, then the trust we place in state courts to adjudicate issues of federal law (both statutory and constitutional) is completely misplaced, and the deference we give them under AEDPA is a colossal and unjustified mistake.