# United States Court of Appeals
## For the First Circuit

No. 23-1810

JOSEPH DONOVAN,

Petitioner, Appellant,

v.

MASSACHUSETTS PAROLE BOARD,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor, IV, U.S. District Judge]

Before

Montecalvo, Lynch, and Kayatta,
Circuit Judges.

Paul K. Donovan, with whom Donovan Legal PLLC was on brief, for appellant.

Gabriel T. Thornton, Assistant Attorney General, with whom Andrea Joy Campbell, Attorney General of Massachusetts, was on brief, for appellee.

December 23, 2025

**MONTECALVO, Circuit Judge**.  Petitioner Joseph Donovan seeks to file a second-in-time application for habeas relief.  The question presented on appeal is whether he must contend with 28 U.S.C. § 2244(b)'s stringent "gatekeeping" requirements in doing so.  The answer depends on whether his second-in-time petition is properly considered a "second or successive . . . application" for habeas relief under § 2244(b), according to the Supreme Court's interpretation of that "term of art."  Donovan must satisfy the gatekeeping requirements only if it is.

According to the Court, the phrase "second or successive . . . application" in § 2244(b) does not "necessarily 'refer to all habeas filings [under 28 U.S.C. § 2254] made second or successively in time, following an initial application.'"  Rivers v. Guerrero, 605 U.S. 443, 452 (2025) (cleaned up) (quoting Banister v. Davis, 590 U.S. 504, 511 (2020)).[1]  Relevant here, it does not refer to second-in-time petitions that challenge a new judgment.  Magwood v. Patterson, 561 U.S. 320, 341–42 (2010).

Here, Donovan received a mandatory sentence of life imprisonment without the possibility of parole for an offense

---

[1] The phrase "second or successive" in § 2244(b) modifies "habeas corpus application[s] under [§] 2254."  28 U.S.C. § 2244; see Magwood v. Patterson, 561 U.S. 320, 331–32 (2010).  Section 2254 governs when a federal court can hear "an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court," and § 2244, which references § 2254, addresses the finality of determinations in habeas corpus cases.

committed when he was a juvenile. Years later, however, the Supreme Judicial Court of Massachusetts ("SJC") held that such life-without-parole sentences were unconstitutional for juveniles. Diatchenko v. Dist. Att'y for the Suffolk Dist., 1 N.E.3d 270, 281-82 (Mass. 2013). Donovan's sentence was consequently modified from one of life without parole to one of life with the possibility of parole. The more discrete question we must answer, then, is whether that modification constitutes a new judgment. See Magwood, 561 U.S. at 332-35. If so, Donovan's proposed second-in-time petition challenges a new, intervening judgment and does not trigger § 2244(b)'s gatekeeping requirements. Because we hold that such a modification constitutes a new judgment, we conclude that § 2244(b) is inapplicable, and Donovan need not receive pre-authorization from this court prior to filing his second-in-time petition. We therefore reverse the district court's judgment.

## I.    Factual and Procedural History

In 1992, when Joseph Donovan was 17 years old, he and two acquaintances, one of whom was only 15, decided to attempt to steal money from lockers on the campus of the Massachusetts Institute of Technology ("MIT") in Cambridge, Massachusetts. Commonwealth v. Donovan, 662 N.E.2d 692, 694 (Mass. 1996). On their way to the lockers, the trio encountered two Norwegian nationals who were enrolled as students at MIT. Id. at 694-95.

Following a brief exchange, Donovan punched one of the students, Yngve Raustein, who fell to the ground. Id. at 695. While Raustein was on the ground, the 15-year-old acquaintance fatally stabbed him. Id. Donovan and both acquaintances fled the scene but were later apprehended by the police. Id.

After a jury trial, Donovan was convicted of robbery and first-degree murder pursuant to the applicable felony-murder doctrine under Massachusetts law. Id. The trial court consequently imposed on Donovan the then-mandatory sentence for first-degree murder: life imprisonment without the possibility of parole. After exhausting his direct appeals, Donovan filed his first petition for a writ of habeas corpus in the U.S. District Court for the District of Massachusetts in 1997, which was denied in 2002. Donovan did not appeal that denial.

Then, in 2012, the United States Supreme Court held "that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" Miller v. Alabama, 567 U.S. 460, 465 (2012). In a follow-on decision in 2013, Diatchenko, the SJC held that the Supreme Court's decision in Miller had retroactive effect for juveniles sentenced under the Commonwealth's extant mandatory scheme, which provided life-without-parole sentences for all people convicted of first-degree murder, including juveniles. 1 N.E.3d at 281-82. In

- 4 -

Diatchenko, the SJC also held that "the discretionary imposition of a sentence of life in prison without the possibility of parole on juveniles who are under the age of eighteen when they commit murder in the first degree violates the prohibition against 'cruel or unusual punishment[ ]' in art. 26 [of the Massachusetts Constitution]." Id. at 284-85 (emphasis added). In light of these twin holdings, the SJC found that the language of chapter 265, section 2 of the General Laws of Massachusetts, which sets forth the mandatory life-without-parole sentencing scheme, "[wa]s invalid as applied to juvenile homicide offenders." Id. at 286. As a result, Donovan's life-without-parole sentence was modified such that he became parole eligible. Indeed, following a 2014 parole hearing, Donovan was granted parole, and subsequently released.

In 2020, Donovan initiated the instant suit by requesting pre-authorization from this court to file a second or successive habeas corpus petition pursuant to 28 U.S.C. § 2244(b)(2)-(3). Rather than grant or deny authorization, however, this court issued a judgment ordering that Donovan's case be transferred to the district court. J., Donovan v. Mass. Parole Bd., No. 20-2139 (1st Cir. Sept. 8, 2022). We noted that Donovan's prior life-without-parole sentence had been altered to render him parole eligible and that such a "sentence modification could implicate the principles discussed by the . . . Supreme Court in

- 5 -

Magwood v. Patterson, 561 U.S. 320 (2010)," which held that where a petitioner has received a new judgment, a second-in-time petition may not need to satisfy § 2244(b)'s requirements. Id. We also explained that transferring the case would enable the district court to, "in the first instance, determine whether Donovan's claims require pre-authorization." Id.

Following transfer to the district court, the parties briefed and argued the question of the necessity of pre-authorization. Then, on September 15, 2023, the district court ruled that adding parole eligibility to Donovan's life sentence did not constitute a new judgment for purposes of Magwood and that Donovan therefore must receive pre-authorization from this court prior to filing his second-in-time petition.

This timely appeal followed.

## II.   Standard of Review

Whether Donovan's second-in-time petition constitutes a "second or successive . . . application" under § 2244(b) such that the petition must satisfy the statute's demanding "gatekeeping" requirements is a question of law that we consider de novo. See Rojas-Medina v. United States, 924 F.3d 9, 15 (1st Cir. 2019) ("Questions of law, of course, engender de novo review.").

## III.   Discussion

As a preliminary matter, we note that the arguments advanced by the parties are limited in scope. Both Donovan and

Respondent, the Massachusetts Parole Board ("MPB"), address only whether the addition of parole eligibility to Donovan's life sentence, precipitated by the Supreme Court's decision in Miller and, more directly, the SJC's follow-on decision in Diatchenko, had the effect of imposing a new sentence on Donovan such that his proposed second-in-time habeas petition challenges a new judgment. If so, Donovan's second-in-time petition does not qualify as a "second or successive . . . application" as that "term of art" is used in § 2244(b)(2). Rivers, 605 U.S. at 452; see Magwood, 561 U.S. at 332-33. Donovan argues that he received a new sentence and therefore a new judgment; MPB contends he did not. Accordingly, we answer only that question and do not address whether any other procedural or substantive barriers foreclose Donovan's petition. See Riley v. Bondi, 606 U.S. 259, 273 (2025) ("Courts generally decide only the questions that are presented by the parties." (citing Henderson v. Shinseki, 562 U.S. 428, 434 (2011))).

With that, we turn to precedent governing whether second-in-time petitions are "second or successive" under § 2244(b). In Magwood, the Supreme Court posed the question as "whether a first [habeas petition] challenging a new sentence in an intervening judgment is second or successive" for purposes of § 2244(b). 561 U.S. at 335 n.11. It answered in the negative, concluding that "where . . . there is a 'new judgment intervening

- 7 -

between the two habeas petitions,' an application challenging the resulting new judgment is not 'second or successive' at all." Id. at 341-42 (citation omitted) (quoting Burton v. Stewart, 549 U.S. 147, 156 (2007) (per curiam)). Indeed, the Court stated that "the existence of a new judgment is dispositive" of the question, id. at 338, and explained at length its view that the "statutory context" strongly supported concluding that "the phrase 'second or successive' must be interpreted with respect to the judgment challenged," id. at 332-33.

What, then, constitutes a new judgment for purposes of § 2244(b)? Relevant here, when considering the statute of limitations applicable to § 2244, the Court explained that a judgment becomes final when "both [a] conviction and [a] sentence 'bec[o]me final.'" See Burton, 549 U.S. at 156-57 (quoting § 2244(d)). This makes clear that a judgment consists of both a conviction and a sentence. See id. at 156. Therefore, for the purposes of applying § 2244(b), a new sentence can qualify as a new judgment.[2] See id.

This leads us to the question we must decide: whether Donovan received a new sentence when his sentence was changed from

_____

[2] In Magwood, the Supreme Court held that a challenge to a "new judgment" is not "second or successive," but did not directly address the effect of a new sentence. 561 U.S. at 341-42. Still, because a criminal judgment includes a sentence, the existence of a new sentence can demonstrate a new judgment for purposes of § 2244. See Burton, 549 U.S. at 156.

- 8 -

one of life without parole to life <u>with</u> the possibility of parole and whether that new sentence qualifies as a new judgment for purposes of § 2244(b). On this question, we are not aware of, and the parties did not identify, any binding precedent. The Supreme Court has, however, in prior decisions addressed life-without-parole sentences vis-a-vis life terms with the possibility of parole.

In <u>Miller</u>, the Court considered whether mandatory sentences of life imprisonment without the possibility of parole -- which the Court termed "life-without-parole sentences" -- could be constitutionally imposed on juveniles who have been convicted of criminal offenses consistent with the Eighth Amendment's prohibition on "cruel and unusual punishments." <u>See</u> 567 U.S. at 465, 469; U.S. Const. amend. VIII. En route to concluding that such mandatory sentencing schemes violate the Cruel and Unusual Punishments Clause due to the unique characteristics of youth and the attendant need for individualized consideration, the Supreme Court contrasted life imprisonment with and without the possibility of release. <u>Miller</u>, 567 U.S. at 471-74, 489.

Relevant here, in the opinion's opening paragraph the Court stated that "life <u>with</u> the possibility of parole" is a "lesser sentence" than "life imprisonment without the possibility of parole." <u>Id.</u> at 465. And the Court's analysis in <u>Miller</u>

- 9 -

reflects that understanding. For example, in explaining the importance of discretion at the sentencing stage, the Court highlighted that discretion would allow "a judge or jury [to] choose, rather than a life-without-parole sentence" an alternative sentence such as "a lifetime prison term with the possibility of parole or a lengthy term of years."[3] Id. at 489.

And in Graham v. Florida, the Supreme Court considered whether life without parole can ever be constitutionally imposed on a juvenile who was convicted of an offense other than homicide. 560 U.S. 48, 52-53 (2010). There, as in Miller, the Court treated life without parole and life with the possibility of parole as distinct, alternative sentences. Id. at 69-70. That view is most

_____

[3] As we noted above, the question presented in Miller was whether mandatory life-without-parole sentencing schemes could be constitutionally imposed on juveniles, not whether the change of a juvenile's sentence from life without parole to life with the possibility of parole meant that the juvenile had been resentenced. 567 U.S. 460. Miller's statement, then, that "life with the possibility of parole" is a "lesser sentence" than life without parole and its analysis which reiterated that view constitutes dictum. Id. at 465, 489. But "carefully considered statements of the Supreme Court, even if technically dictum, must be accorded great weight and should be treated as authoritative." Crowe v. Bolduc, 365 F.3d 86, 92 (1st Cir. 2004) (cleaned up) (quoting United States v. Santana, 6 F.3d 1, 9 (1st Cir. 1993)). Indeed, we have gone so far as to note that "[a]lthough the Supreme Court may ignore its own dicta, we are a lower court bound by the Supreme Court." Igartúa v. United States, 626 F.3d 592, 605 n.15 (1st Cir. 2010). Here we see no basis to conclude that the Supreme Court's characterization of life with the possibility of parole as a lesser, distinct sentence was not carefully considered. Indeed, the Court's reiteration of that view in its analysis suggests the opposite. See Miller, 567 U.S. at 489. Accordingly, we are obliged to apply Miller's "lesser sentence" statement.

visible in its conclusion that life-without-parole sentences for juveniles who have been convicted of nonhomicide offenses violate the Eighth Amendment, whereas sentences of life with the possibility of parole for juveniles who have been convicted of nonhomicide offenses do not. See id. at 74-75. As the Court explained, "[a] State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime," but it "must . . . give [such offenders] some meaningful opportunity to obtain release," i.e., the opportunity to be granted parole. Id. at 75. Implicit in the conclusion that a life-without-parole sentence for juveniles who have been convicted of nonhomicide offenses violates the Constitution, but one with the possibility of parole does not, is the Court's view that there is a material difference between the sentences. Indeed, a difference that is so consequential as to be determinative of a sentence's constitutionality.

In both Miller and Graham, then, the Court treated the sentence of life without parole as meaningfully different from a sentence of life with the possibility of parole. As discussed, that is seen in the Court's clear statement in Miller that life with the possibility of parole is a "lesser sentence" than life without parole, 567 U.S. at 465, and in Graham where it deemed life without parole cruel and unusual, but not life with parole eligibility, 560 U.S. at 74-75. Applying those precedents here,

- 11 -

when the SJC issued its decision in Diatchenko, which changed Donovan's sentence from one of "life without parole" to life with the possibility of parole, he received the benefit of a materially different, new sentence. Because Donovan received a new sentence of life with the possibility of parole, which is a constitutional sentence, he is properly considered to have received a new judgment for purposes of § 2244(b). Burton, 549 U.S. at 156. The result of this conclusion is that because Donovan's proposed second-in-time petition seeks to challenge that new judgment, it is not a "second or successive . . . application" under § 2244(b) and that provision's "gatekeeping" requirements are not implicated. Donovan therefore need not secure this court's pre-authorization prior to filing his second-in-time petition for habeas relief.

MPB's arguments to the contrary are unavailing. To begin, MPB contends that Donovan was not resentenced because he was originally sentenced to life in prison and Diatchenko did nothing to change that. For reasons already explained, however, that argument cannot be squared with Miller's clear statement -- that life with the possibility of parole is a "lesser sentence" than life without parole -- and Graham's holding -- that the inclusion of parole eligibility converts a sentence from unconstitutional to constitutional. Moreover, MPB's argument seeks to improperly elevate form over substance, as arguing that

- 12 -

Donovan's sentence has remained unchanged ignores the reality that he is no longer incarcerated -- an outcome that would have been impossible under his prior life-without-parole sentence.

MPB also suggests that the SJC's method for remedying the unconstitutional sentencing scheme in Diatchenko -- severing the clause providing for parole ineligibility -- demonstrates that Donovan did not receive a new sentence. See 1 N.E.3d at 285-86. We are not so convinced.

In Diatchenko, upon concluding that the sentencing scheme was unconstitutional as applied to juveniles, the SJC declared that the language in chapter 265, section 2 of the General Laws of Massachusetts, that "sets forth the exception to parole eligibility, [wa]s invalid as applied to juvenile homicide offenders." Id. at 286. Noting the provision's severability clause, however, the SJC concluded that the remaining provisions "ha[d] independent force" and could be given effect without the severed clause, and further stated that "Diatchenko's life sentence remains in full force and effect, but the statutory exception to parole eligibility no longer applies to him." Id.

All of this, which MPB recites in its brief, is an accurate summary of the SJC's decision in Diatchenko. That the SJC severed the parole exception provision for juveniles, however, in no way undermines our assessment of whether the effect of the decision was the imposition of a new sentence and a new judgment

on Donovan.  Crucially, it does nothing to counteract the Supreme Court's statement in Miller that a term of life with parole eligibility is a "lesser sentence" than one of life without parole or Graham's implicit conclusion that whether a juvenile's sentence has as a component parole eligibility is determinative of the sentence's constitutionality.  And while the SJC's statement -- that "Diatchenko's life sentence remains in full force and effect," Diatchenko, 1 N.E.3d at 286 -- affirms that his term of imprisonment remained unchanged, it does not contradict the fact that "the opportunity to seek parole is . . . a component of the sentence that the offender receives from a judge," Diatchenko v. Dist. Att'y. for Suffolk Dist. ("Diatchenko II"), 27 N.E.3d 349, 357 n.12 (Mass. 2015).

Finally, as purported conclusive evidence that Donovan did not receive a new sentence, MPB and the dissent cite the SJC's statement in Diatchenko that the petitioner was "not entitled to be resentenced given that he was not improperly sentenced in the first instance, but only was denied the chance to be considered for parole."  1 N.E.3d at 286; see Dissent at 27-28.  We do not agree that this language demands MPB's preferred conclusion. Whether Donovan was entitled to a full resentencing hearing before the trial court is distinct from whether the sentence he received was a new judgment for purposes of § 2244(b).  The SJC's statement that the petitioner was "not entitled to be resentenced" can

likewise be understood to reflect that the SJC thought its decision granted him the relief to which he would have been entitled at a subsequent trial court resentencing hearing. And, necessarily, that any subsequent resentencing hearing would be unnecessary, redundant, and a waste of limited judicial resources.[4]

As for the statement that Diatchenko "was not improperly sentenced in the first instance, but only was denied the chance to be considered for parole," id. at 286, we do not think it is reasonably understood as the SJC squarely addressing and rejecting the view that parole eligibility is a material component of a person's sentence. An equally plausible reading is that it reflected the SJC's view that the correct term of imprisonment was initially and properly imposed and that no correction to that component was necessary.

In our view, the statement is at least ambiguous as to whether parole could form part of a person's sentence. And in

---

[4] This reasoning applies with equal force to the Supreme Court's decision in Montgomery v. Louisiana, in which the Court stated that giving Miller retroactive effect "does not require [s]tates to relitigate sentences" and that states could "remedy a Miller violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." 577 U.S. 190, 212 (2016). The Court in Montgomery also observed that "[a]llowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity -- and who have since matured -- will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment." Id. Because sentences are part of judgments, a new (and constitutional) sentence of life with the possibility of parole, as described in Montgomery, is a new judgment.

light of that ambiguity, it is notable that the SJC stated clearly in Commonwealth v. Mattis, which extended Diatchenko's holding to "emerging adults" between 18 and 20 years old at the time of their offense, that emerging adults impacted by its decision would "receiv[e] the benefit of resentencing under [this] holding." 224 N.E.3d 410, 430 (Mass. 2024). Like Donovan after Diatchenko, the "emerging adults" affected by the Mattis decision had their life-without-parole sentence modified to parole-eligible life terms, and the SJC expressly stated that the emerging adults had received a new sentence. Id. Such a clear statement in a case that granted the same relief (to a different category of defendants) is strong evidence that the SJC understood, and would understand, people benefitted by Diatchenko's holding, including Donovan, to have received a new sentence.

Thus, even were we inclined to accept MPB's invitation to focus on SJC, rather than Supreme Court, precedent, that precedent weighs in favor of finding that Donovan received a new sentence as a result of Diatchenko's holding, which in turn is a new judgment for purposes of applying § 2244(b).

The dissent contends that the panel decision improperly ignores the SJC's severability decision in Diatchenko and diverges from the analyses of several other circuit courts of appeals. Dissent at 26-30, 32-34, 43-46. Neither is the case, for intertwining reasons.

- 16 -

First, we recognize that we are bound by the SJC's severability decision. See Am. Trucking Ass'ns, Inc. v. R.I. Tpk. & Bridge Auth., 123 F.4th 27, 51 (1st Cir. 2024) ("Severability is a matter of state law.").  Our conclusion as to Donovan's new judgment derives from the Diatchenko court's finding that life-without-parole sentences for juvenile homicide offenders are unconstitutional and does not disturb that court's finding as to severability.  The former invalidated as unconstitutional Donovan's original sentence, whereas the latter merely prescribed the remedy for that constitutional violation.  Indeed, the SJC's severability analysis supports our conclusion that Donovan's modified sentence constitutes a new judgment.  The doctrine of severability only comes into play where one part of a law has been held invalid, and the question is whether the remainder may nonetheless be enforced.  See Leavitt v. Jane L., 518 U.S. 137, 139 (1996) (describing a severable provision as "enforceable despite the invalidation of the other provision").  The SJC's decision to sever the unconstitutional portion of the Massachusetts sentencing scheme, then, confirms the invalidity of Donovan's original life-without-parole sentence.  The import of that invalidity will become clear in a moment.

Second, we agree with the dissent and the Eleventh Circuit that "the judgment to which AEDPA refers is the underlying conviction and most recent sentence that authorizes the

- 17 -

petitioner's current detention." Dissent at 43-44 (emphasis omitted) (quoting Cassidy v. Sec'y, Fla. Dep't of Corr., 119 F.4th 1336, 1344 (11th Cir. 2024)). For purposes of this analysis, the most recent sentence that authorized Donovan's detention was life in prison with the possibility of parole. It cannot be Donovan's original, life-without-parole sentence because that sentence has been declared unconstitutional and therefore cannot "authorize[] the petitioner's current detention."

Third, in holding as we do, we need not now dispute that "not every alteration to a sentence or conviction constitutes a new judgment." Dissent at 44 (quoting Cassidy, 119 F.4th at 1343). Thus, for example, our decision today creates no conflict with the proposition that, "[t]o create a new [federal] judgment, a change to a sentence must be accompanied by a legal invalidation of the prior judgment." Dissent at 44-45 (alterations in original) (quoting United States v. Buenrostro, 895 F.3d 1160, 1165 (9th Cir. 2018)). Here, as noted, the Diatchenko court held life-without-parole an unconstitutional sentence for juveniles convicted of homicide, and, as a result, rendered Donovan's original sentence legally invalid. Our conclusion that Donovan received a new judgment thus comports comfortably with the Third and Ninth Circuit caselaw cited by the dissent, which treats "legal invalidation of the prior judgment" as "[t]he essential criterion" in finding a new judgment under AEDPA. Buenrostro, 895 F.3d at

1165 (holding presidential commutation did not create a new judgment because "[a] presidential commutation does not invalidate the prior court-imposed judgment"); see also In re Edwards, 98 F.4th 425, 434-35 (3d Cir. 2024) (finding sentence reduction under First Step Act did not result in new judgment because it did not "have any impact on the validity of the judgment being amended"). We need not now adopt this rule ourselves or otherwise determine what is necessary for a modified sentence to constitute a new judgment because the change to Donovan's sentence clearly suffices either way.

Finally, we note that "a state court's characterization of a habeas petitioner's amended sentence as nunc pro tunc," Dissent at 45 (citing Osbourne v. Sec'y, Fla. Dep't Corr., 968 F.4th 1261 (11th Cir. 2020)), is not at issue in this case. No state court has specifically declared that Donovan's modified sentence applied nunc pro tunc or otherwise did not constitute a new judgment. Nor did the Diatchenko court anywhere expressly state that no new judgment had been entered. See 1 N.E.3d at 286 (stating only that "Diatchenko's life sentence remains in full force and effect" and that "he is not entitled to be resentenced").

The only relevant issue left unresolved by the foregoing stems from the fact that Donovan's actual challenge is to his unchanged conviction rather than to his changed sentence. Magwood itself reserved the question whether to treat such a challenge as

not second or successive.  See 561 U.S. at 342 (explaining that "[t]his case gives us no occasion to address" whether a petitioner who has received a new sentence may "file a subsequent application challenging not only his resulting, new sentence, but also his original, undisturbed conviction").

The six circuit courts to have squarely addressed this issue have all ruled that Magwood may apply to such a challenge. See Johnson v. United States, 623 F.3d 41, 46 (2d Cir. 2010) ("[W]here a first habeas petition results in an amended judgment, a subsequent petition is not successive regardless of whether it challenges the conviction, the sentence, or both."); Lesko v. Sec'y Pa. Dep't of Corr., 34 F.4th 211, 224-25 (3d Cir. 2022) ("Because both a conviction and sentence are necessary to authorize a prisoner's confinement, and resentencing creates a new judgment authorizing a prisoner's continued confinement, a petition challenging either component of that new judgment -- be it conviction or sentence -- is not second-or-successive." (footnote omitted)); In re Gray, 850 F.3d 139, 143 (4th Cir. 2017) ("[W]hen a habeas petition is the first to challenge a new judgment, it is not second or successive within the meaning of § 2244(b), regardless of whether it challenges the sentence or the underlying conviction."); King v. Morgan, 807 F.3d 154, 156 (6th Cir. 2015) ("[A] habeas petitioner, after a full resentencing and the new judgment that goes with it, may challenge his undisturbed

conviction without triggering the 'second or successive' requirements."); Wentzell v. Neven, 674 F.3d 1124, 1127-28 (9th Cir. 2012) (holding similarly in the context of AEDPA's statute of limitations because "we treat the judgment of conviction as one unit, rather than separately considering the judgment's components, i.e., treating the conviction and sentence for each count separately"); Insignares v. Sec'y, Fla. Dep't of Corr., 755 F.3d 1273, 1281 (11th Cir. 2014) ("[W]hen a habeas petition is the first to challenge a new judgment, it is not 'second or successive,' regardless of whether its claims challenge the sentence or the underlying conviction.").

Two other circuits reached a contrary result but only by deferring to pre-Magwood circuit precedent. Suggs v. United States, 705 F.3d 279, 283-85 (7th Cir. 2013); Burks v. Raemisch, 680 F. App'x 686, 691 (10th Cir. 2017) (unpublished decision). And one other, although initially seeming to doubt Magwood's applicability in such situations, has recently changed course in an unpublished opinion. Contrast In re Lampton, 667 F.3d 585, 587-88, 589 (5th Cir. 2012) (finding "no new, intervening judgment to trigger the operation of Magwood," where second-in-time petition sought to challenge conviction and life sentence untouched by prior, successful habeas petition that invalidated separate count of conviction underlying concurrent life sentence), with In re Greenwood, No. 19-60884, 2022 WL 501393, at *2-3

(5th Cir. Feb. 18, 2022) (unpublished decision) (determining that new sentence constituted new judgment under In re Lampton and rejecting argument that petition was successive "because the petition challenges the original conviction rather than the new sentence").

Consistent with this weight of authority, Donovan argues that it matters not that he challenges his conviction rather than his new sentence. MPB, in turn, offers no argument at all to the contrary. Nor, for that matter, did the district court. Accordingly, any such argument is waived. See United States v. Reyes-Correa, 971 F.3d 6, 16 (1st Cir. 2020) ("The appellee waives, as a practical matter anyway, any objections not obvious to the court to specific points urged by the appellant." (cleaned up) (quoting Beazer E., Inc. v. Mead Corp., 412 F.3d 429, 437 n.11 (3d Cir. 2005))). That Donovan's petition challenges only his original, undisturbed conviction thus does not change our conclusion that the petition is not second or successive under AEDPA.

## IV. Summary

In summary, this appeal turns on a narrow, technical question of habeas procedure under AEDPA. Is Donovan now subject to a new judgment? Certainly, he is subject to a new sentence. As the Supreme Court plainly states, "life with the possibility of parole" is a "lesser sentence" than "life imprisonment without the

possibility of parole." Miller, 567 U.S. at 465. And while our dissenting colleague rejects the Supreme Court's common-sense pronouncement as dictum, the dissenting opinion itself concedes that, under Massachusetts law, "parole eligibility is 'merely' a component of [an] existing sentence." Dissent at 29 n.6 (quoting Diatchenko II, 27 N.E.3d at 353). So it follows inexorably that a change in that component means a change in the sentence.

That leaves the question whether Donovan's change in sentence constitutes a change in (i.e., a new) judgment. The law is quite clear that the sentence is part of the judgment. See Fed. R. Crim. P. 32(k)(1) (A "judgment of conviction" consists of "the plea, the jury verdict or the court's findings, the adjudication, and the sentence."). Indeed, were the sentence not part of the judgment, appeals from convictions might be heard pre-sentencing. In this case, Donovan's original sentence of life without parole was replaced, as unconstitutional, by the lesser sentence of life with the opportunity of parole, so it stands to reason that the original judgment of which that sentence was a component was also replaced by operation of law. Therefore, when Donovan received a new, lesser sentence to replace his prior, unconstitutional sentence, he also received a new judgment.

Finally, the fact the SJC, the Massachusetts high court, effected the new, lesser sentence by ruling across the board in 2013 that the "no parole" law no longer applies to people who were

previously convicted as juveniles does not call for a different conclusion. Under <u>Magwood</u>, the issue is whether the original judgment changed, not how it changed. There being no other relevant arguments advanced by MPB, we rule in Donovan's favor on the limited, procedural question before us.

## V. Conclusion

The judgment of the district court is therefore **<u>reversed</u>**. The case is remanded for further proceedings consistent with this opinion.

**-Dissenting Opinion Follows-**

**LYNCH**, **Circuit Judge**. With respect, I dissent because Donovan's second/successive habeas challenge is barred and he may not challenge yet again his judgment and life sentence resulting from his 1993 first-degree murder conviction. The Massachusetts Supreme Judicial Court (SJC) left that judgment of conviction and life sentence in place after the Supreme Court's decision in Miller v. Alabama, 567 U.S. 460 (2012). See Diatchenko v. Dist. Att'y for Suffolk Dist., 1 N.E.3d 270, 282, 286 (Mass. 2013). And Miller's progeny, Montgomery v. Louisiana, 577 U.S. 190, 212 (2016), held that it was the choice of each state as to whether in these circumstances it would enter a new sentence and whether it would enter a new judgment. Massachusetts chose to do neither. The majority wrongly concludes, based on its misapprehension of federal law, that Massachusetts is forbidden to make the choices it has made. In doing so, the majority flatly violates Montgomery and numerous restrictions on federal habeas contained in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, and in Supreme Court caselaw.

Given the majority's multiple legal errors, this case warrants further review. The majority undercuts the sentencing choices left to the states by Montgomery as to how best to handle juveniles who commit first-degree murder and, in doing so, disrupts fundamental principles of federalism. The majority incorrectly reasons that because Miller in a descriptive language choice

- 25 -

described a life sentence with the possibility of parole as a "lesser sentence" than life without the possibility of parole, 567 U.S. at 465, Donovan necessarily received a "new" sentence as a matter of federal law. The majority then concludes that this supposed new sentence necessarily created a "new" judgment under AEDPA. Accordingly, the majority permits juvenile offenders made parole eligible by Diatchenko to bypass AEDPA's gatekeeping restrictions on successive federal habeas petitions. That conclusion violates AEDPA's text and limitations, contradicts the SJC's holding as a matter of state statutory interpretation that Donovan has no new criminal judgment and no new sentence, and squarely conflicts with Montgomery. The district court correctly denied further habeas review and should be affirmed.

## I.

In Miller, the Supreme Court held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" 567 U.S. at 465. The SJC, in response to Miller and relying on Article 26 of the Massachusetts Declaration of Rights, accordingly struck only one aspect of the mandatory life without parole sentence required by Mass. Gen. Laws ch. 265, § 2, for first-degree murder convictions as to juveniles. See Diatchenko, 1 N.E.3d at 275-76, 285-86. In Diatchenko, the SJC, applying Massachusetts statutory interpretation canons, honored

- 26 -

and effectuated the severability and sentencing choices made by the Massachusetts legislature. See id. at 285-86. The SJC determined that "[w]hen the Legislature enacted [Mass. Gen. Laws ch. 265, § 2], it specifically provided that '[i]f any of the provisions of this act or the application thereof to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of this act which can be given effect without the invalid provisions or applications, and to this end the provisions of this act are declared severable.'" Id. at 286 (third alteration in original) (quoting 1982 Mass. Acts 1232). The SJC found the "without parole" provision to be severable and did not declare the sentence invalid under the remaining language of the statute. That remaining language "provides, in relevant part, that any person who is found guilty of murder in the first degree 'shall be punished by imprisonment in the [S]tate prison for life.'" Id. at 282 (alteration in original) (quoting Mass. Gen. Laws ch. 265, § 2). The SJC held that only the language "set[ting] forth the exception to parole eligibility[] is invalid as applied to juvenile homicide offenders." Id. at 286. The SJC further held that such juvenile convictions resulting in life sentences "remain[ed] in full force and effect, but the statutory exception to parole eligibility no longer applie[d]." Id. The SJC then explicitly held that juvenile homicide offenders were "not entitled to be resentenced" as they were "not improperly

- 27 -

sentenced in the first instance, but only . . . denied the chance to be considered for parole."[5]  Id.

_____

[5] The majority misreads Commonwealth v. Mattis, 224 N.E.3d 410 (Mass. 2024), which extended Diatchenko's holdings to defendants who were 18, 19, or 20 years old at the time of their homicide offenses.  See id. at 428.  As was true in Diatchenko, the SJC invalidated only the parole-disabling portions of the applicable statutory scheme for the affected age group -- specifically, that portion of Mass. Gen. Laws ch. 265, § 2(a), that denies parole eligibility, and that portion of Mass. Gen. Laws ch. 127, § 133A, that denies parole.  See id. at 429.

Mattis also does not support the majority for another reason. Diatchenko held that juvenile offenders serving life sentences for first-degree murder were immediately eligible for parole consideration under the State's parole statute, which at the time provided parole eligibility after 15 years for all life sentences other than for first-degree murder.  See 1 N.E.3d at 286 (citing Mass. Gen. Laws ch. 127, § 133A).  In response to Diatchenko, the Massachusetts legislature created a graduated scheme of parole eligibility for juveniles convicted of first-degree murder.  See Mattis, 224 N.E.3d at 428-29 (citing Mass. Gen. Laws ch. 279, § 24).  Because the legislature had not provided any parole eligibility scheme for 18- to 20-year-old homicide offenders, Mattis found it "reasonable to conclude that the Legislature would impose the next most severe penalty provided in its sentencing scheme" on that group.  Id. at 429 (quoting Commonwealth v. Brown, 1 N.E.3d 259, 264 (2013)).  That meant, in relevant part, applying the graduated parole eligibility scheme created for juvenile homicide offenders to those 18- to 20-year-olds who were convicted of first-degree murder after the scheme took effect.  See id.

The majority thus misinterprets Mattis's isolated use of the word "resentencing" in the SJC's statement that Mattis "'should not be construed' to suggest that emerging adults receiving the benefit of resentencing under [Mattis's] holding 'should be paroled once they have served a statutorily designated portion of their sentences.'"  Id. at 430 (quoting Diatchenko, 1 N.E.3d at 286).  The majority treats that phrasing as confirmation that the emerging adults covered by Mattis -- and, by extension, the juveniles covered by Diatchenko -- received a new sentence that necessarily created a new judgment under AEDPA.  Not so.  The SJC's reference to "resentencing" merely reflected the need to determine initial parole eligibility dates for 18- to 20-year-old homicide offenders under the appropriate sentencing scheme.  That step was,

- 28 -

The SJC's decision to sever the parole ineligibility clause left Donovan's original life sentence intact. The court's severability holding was not "ambiguous" or open to an "equally plausible reading," as the majority states. Diatchenko clearly held as a matter of state law that Donovan was not resentenced but merely could be "considered for parole."[6] Id. Beyond that, Massachusetts law is crystal clear that the state parole board lacks any power or authority to modify sentences, and that the

_____

as noted, unnecessary for the juvenile homicide offenders covered by Diatchenko. Mattis did not vacate any convictions or impose new sentences, and it certainly did not create new judgments.

[6] The majority erroneously relies on dicta in a footnote in the later-decided Diatchenko v. District Attorney for the Suffolk District ("Diatchenko II"), 27 N.E.3d 349 (2015), which stated that "the opportunity to seek parole is . . . a component" of a sentence. Id. at 357 n.12. That footnote is inapposite and does not bear the weight the majority places on it. Diatchenko II addressed the procedural protections needed to ensure a meaningful opportunity for release through parole for juvenile homicide offenders. See id. at 353. It did not revisit, alter, or undermine the SJC's earlier holdings in Diatchenko I, including its holding that severing the parole ineligibility clause left the juvenile offenders' original life sentences intact and did not entitle them to resentencing. The footnote at issue in Diatchenko II instead made a narrower and distinct point: although parole eligibility is essential to the constitutionality of a juvenile life sentence, it does not turn "the conduct of the parole hearing into part of the sentencing process." Id. (quoting id. at 370 (Spina, J., dissenting)). To underscore that distinction, the SJC explained that an "offender's sentence is fixed at the time of sentencing" and that parole eligibility is "merely" a component of that existing sentence. Id. Actually the footnote works against the majority. Even on the majority's own terms, describing parole eligibility as a mere "component" of a sentence does not mean -- and indeed cannot mean under Diatchenko I -- that making an offender parole eligible creates a "new" judgment under AEDPA.

- 29 -

board has no power to alter or reverse judgments.  See Commonwealth v. Cole, 10 N.E.3d 1081, 1087 (Mass. 2014) ("[T]he authority of the parole board is limited to the release from custody of a defendant within the maximum term of imprisonment imposed by the sentencing judge." (emphasis omitted)); see also id. at 1089 ("The trial of those charged with crime and the imposition of sentences upon those convicted are a part of the functions of courts."). These holdings of the SJC mean that Donovan's petition at issue must be denied.[7]

As a matter of state law, Donovan's efforts at post-conviction relief in state court have failed and have not changed his judgment and life sentence resulting from his 1993 conviction. In 2013, before Diatchenko, Donovan filed a motion under Mass. R. Crim. P. 30(b) seeking a new trial, dismissal of the charges, or a new sentence, which he later amended in light of Diatchenko. The claims Donovan now presses in his second petition are largely the same as those raised in his Rule 30(b) motion and rejected.[8]

[7] The SJC's rulings provide an independent reason why Donovan's second petition is barred: No federal habeas petition is stated as to the SJC's resolution of state statutory interpretation issues.  See Kimbrough v. Neal, 941 F.3d 879, 882 (7th Cir. 2019) (holding that federal habeas relief cannot turn on "a state court's resolution of a state law issue" (citing, e.g., Bradshaw v. Richey, 546 U.S. 74, 76 (2005))).

[8] In his first federal habeas petition, Donovan argued that the trial court failed to instruct the jury on lesser-included offenses and that he received ineffective assistance of counsel. In his second petition, he asserted claims, rejected by the state courts as meritless, that "new evidence cast serious doubt on [his]

The state superior court denied the motion on the merits in 2017, and a single justice of the SJC affirmed the denial in 2019 and later rejected Donovan's motion for reconsideration. See Commonwealth v. Donovan, No. 9281-CR-01666 (Mass. Super. Ct. Oct. 2, 2017), Dkt. No. 130; Commonwealth v. Donovan, No. SJ-2017-0445 (Mass. July 3 & Dec. 2, 2019) (Gaziano, J.), Dkt. Nos. 12, 17.

**II.**

Each step in the majority's analysis is wrong both as a

---

conviction for joint venture felony murder," that the prosecution withheld exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963), and that he received ineffective assistance of counsel from both his trial and appellate counsel.

Donovan also raised each of the federal habeas claims in his second habeas petition in his state court Rule 30(b) motion. The state superior court soundly rejected them. The court concluded that the supposed new evidence consisted of affidavits and testimony that were inadmissible, unreliable, or immaterial under Massachusetts law. The Brady claims failed because the allegedly undisclosed transcripts would not have affected the verdict. And Donovan's ineffective assistance claims were deemed waived as to trial counsel and unpersuasive as to appellate counsel.

That Donovan's second federal habeas petition attempts to raise two new claims that were not included in his first petition and to assert another claim of ineffective assistance of counsel does not make his judgment of conviction a "new" judgment or his sentence a "new" sentence. "[T]he Supreme Court has declined to interpret 'second or successive' to turn on whether the petitioner 'had a full and fair opportunity to raise [the later-asserted claims] in a prior application' because such an interpretation would 'undermine' section 2244(b)(2), which is meant to bar many claims that a petitioner did not have an opportunity to litigate." Anderson v. Divris, 138 F.4th 625, 636 (1st Cir. 2025) (second alteration in original) (quoting Magwood v. Patterson, 561 U.S. 320, 335 (2010)). AEDPA's bar applies even to claims that could not have been raised in a prior petition. See id. (citing Magwood, 561 U.S. at 335).

- 31 -

matter of AEDPA's text and congressional intent and separately as a matter of Supreme Court and circuit habeas caselaw.

The text of AEDPA states that a state prisoner's federal habeas petition (a) must challenge a state court "judgment" and (b) specifically must challenge the judgment pursuant to which the petitioner is "in custody."  28 U.S.C. § 2254(a).  Donovan in this application challenges the state court judgment for his 1993 conviction pursuant to which he has been in custody.  The petition at issue is a "second or successive" petition under AEDPA because it challenges the same 1993 judgment as did his 1997 federal habeas petition and so is barred.[9]  Id. § 2244(b)(1).  The SJC has expressly stated as a matter of state law that no new judgment or sentence has been entered.  The majority nonetheless holds -- based on a misreading of Supreme Court cases discussed in Part III --

---

[9] Both Donovan's present habeas petition and his 1997 habeas petition have challenged only his undisturbed conviction for first-degree murder and so he is precluded by AEDPA and the policies underlying AEDPA from getting a second bite at the habeas apple.  See Rivers v. Guerrero, 605 U.S. 443, 450 (2025); see also Anderson, 138 F.4th at 635.  Donovan does not challenge his sentence of life imprisonment but the 1993 criminal judgment pursuant to which he has continually been in custody and which resulted in the life sentence.  AEDPA's text specifies that the "the only judgment that counts for purposes of section 2244 is the judgment 'pursuant to' which the prisoner is 'in custody.'" Patterson v. Sec'y, Fla. Dep't of Corr., 849 F.3d 1321, 1326 (11th Cir. 2017) (en banc) (quoting 28 U.S.C. § 2254).

that Donovan has a "new" sentence as a matter of federal law. But state law, not federal law, controls these issues.

Where the severability of a state statute is at issue, federal courts are bound by how the state's courts construct that statute, including whether its provisions are severable. See Virginia v. Hicks, 539 U.S. 113, 121 (2003) (holding that whether the provisions of a local housing authority's trespass policy "are severable is of course a matter of state law"); see also Am. Trucking Ass'ns, Inc. v. R.I. Tpk. & Bridge Auth., 123 F.4th 27, 51 (1st Cir. 2024) ("Severability is a matter of state law." (citing Leavitt v. Jane L., 518 U.S. 137, 139 (1996))). "The task of determining the intention of the state legislature in this respect, like the usual function of interpreting a state statute, rests primarily upon the state court. Its decision as to the severability of a provision is conclusive upon [the federal courts]." Ballester-Ripoll v. Ct. of Tax Appeals of P.R., 142 F.2d 11, 19 (1st Cir. 1944) (quoting Dorchy v. Kansas, 264 U.S. 286, 290-91 (1924)); see also Hooper v. Bernalillo Cnty. Assessor, 472 U.S. 612, 624 (1985) ("It is for the New Mexico courts to decide, as a matter of state law, whether the state legislature would have enacted the statute without the invalid portion."); United States v. R.I. Insurers' Insolvency Fund, 80 F.3d 616, 623 n.6 (1st Cir. 1996) (holding that the decision as to whether preempted provisions of a Rhode Island statute are not severable

rests with the state courts (citing Hooper, 472 U.S. at 624)). The majority now acknowledges these principles but refuses to accept the SJC's own severability determination in Diatchenko.

The majority is just wrong when it says that Donovan has received a "new" sentence and that that necessarily creates a "new" state court judgment under AEDPA.[10] AEDPA provides that "[a] claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed" and that a claim "not presented in a prior application shall be dismissed unless" it meets one of the statute's two exceptions. 28 U.S.C. § 2244(b)(1)-(2). The Supreme Court has held that the meaning of the phrase "second or successive" does not refer to common usage but is determined by the language of AEDPA and statutory context. See Magwood v. Patterson, 561 U.S. 320, 332-33 (2010). AEDPA's limitations on successive petitions apply to an "application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court." Id. at 332 (quoting 28 U.S.C. § 2254(b)(1)). "The reference to a state-court judgment . . . is significant because the term 'application' cannot be defined in a vacuum." Id. A habeas application from a state criminal judgment "seeks invalidation (in

_____

[10] The majority was right to retreat from the suggestion that the terms "judgment" and "sentence" are interchangeable in the criminal context, but in substance it continues to conflate them.

- 34 -

whole or in part) of the judgment authorizing the prisoner's confinement." Id. (quoting Wilkinson v. Dotson, 544 U.S. 74, 83 (2005)). The Court held that "the phrase 'second or successive' must be interpreted with respect to the judgment challenged." Id. at 333. Unlike Donovan's situation, it is only where "there is a 'new judgment intervening between the two habeas petitions'" that "an application challenging the resulting new judgment is not 'second or successive.'" Id. at 341-42 (citation omitted) (quoting Burton v. Stewart, 549 U.S. 147, 156 (2007)).

Congress's use in 28 U.S.C. section 2254(b) of the word "judgment" rather than "sentence" was deliberate.[11] These two words, particularly as Congress has used them, do not and cannot mean the same thing. The Federal Rules of Criminal Procedure, effective since 1946, have, with only minor stylistic revisions, defined a "judgment of conviction" as "set[ting] forth the plea, the verdict or findings, and the adjudication and sentence." Fed. R. Crim. P. 32(b), 327 U.S. 821, 855 (effective Mar. 21, 1946)

---

[11] Well before it enacted AEDPA, Congress regularly used the term "sentence" in federal criminal statutes distinguishing sentences from convictions. See, e.g., 18 U.S.C. § 3553(a) (factors to be considered by courts "in imposing a sentence"); id. § 3561(a) (allowing a court to "sentence[] [a defendant] to a term of probation"); id. § 3583(a) (court may "include as a part of the sentence" a term of supervised release); id. § 3742(a)-(b) (authorizing appeal of an "otherwise final sentence"). Contrast this use of "sentence" with 18 U.S.C. section 3582, setting forth rules for imposing and modifying federal sentences of imprisonment and using the language "a judgment of conviction that includes such a sentence constitutes a final judgment." Id. § 3582(b).

(emphasis added)); see also Fed. R. Crim. P. 32(k)(1) (2025) ("In the judgment of conviction, the court must set forth the plea, the jury verdict or the court's findings, the adjudication, and the sentence."). The majority's holding that Donovan's criminal sentence is a "judgment" under AEDPA not only violates AEDPA but is contrary to First Circuit precedent: "In a criminal case, a judgment includes . . . 'the plea, the jury verdict or the court's findings, the adjudication, and the sentence.'" Rossetti v. United States, 773 F.3d 322, 332 n.7 (1st Cir. 2014) (quoting Fed. R. Crim. P. 32(k)(1)).

The Federal Rules of Criminal Procedure "are 'prescribed by the Supreme Court pursuant to the authority conferred upon the [C]ourt by Congress' through the Rules Enabling Act." Quinones-Pimentel v. Cannon, 85 F.4th 63, 74 (1st Cir. 2023) (alteration in original) (quoting Miranda v. United States, 255 F.2d 9, 15 (1st Cir. 1958)), cert. denied, 145 S. Ct. 172 (2024). They are "as binding as any statute duly enacted by Congress." Bank of N.S. v. United States, 487 U.S. 250, 255 (1988). When interpreting AEDPA, we must apply the "commonplace" principle that "Congress legislates against the backdrop of existing law." Parker Drilling Mgmt. Servs., Ltd. v. Newton, 587 U.S. 601, 611 (2019) (second quoting McQuiggin v. Perkins, 569 U.S. 383, 398 n.3 (2013)).

The majority's errors are also demonstrated by comparing the text of AEDPA as to <u>state</u> habeas petitions set forth at 28 U.S.C. section 2254 against the different language in the underlying <u>federal</u> post-conviction relief statute under 28 U.S.C. section 2255. These provisions were enacted alongside each other and were amended by AEDPA. <u>See</u> Act of June 25, 1948, ch. 646, §§ 2254-2255, 62 Stat. 869, 967-68; AEDPA, Pub. L. No. 104-132, §§ 104-105, 110 Stat. 1214, 1217-18. Section 2254(a) authorizes relief for a person "in custody pursuant to the <u>judgment</u> of a State court" (emphasis added). In contrast, Congress chose as to federal prisoners under section 2255(a) to refer to "[a] prisoner in custody under <u>sentence</u> of a court established by Act of Congress" who "may move the court which imposed the <u>sentence</u> to vacate, set aside, or correct the <u>sentence</u>" (emphases added). "When Congress uses 'one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea.'" <u>FDA</u> v. <u>R.J. Reynolds Vapor Co.</u>, 606 U.S. 226, 238 (2025) (quoting A. Scalia & B. Garner, Reading Law 170 (2012)). These differences evidence congressional concern with comity and finality of state court criminal judgments, as described in Part V.

### III.

The majority's reasoning and conclusion directly conflict with <u>Montgomery</u> v. <u>Louisiana</u>, 577 U.S. 190 (2016), which held that a state could choose to address <u>Miller</u> by extending

parole eligibility to juvenile homicide offenders, without resentencing and without creating a new judgment. See id. at 212. The Court explained that states need not "relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole," but may instead "permit[] [such] offenders to be considered for parole." Id. Massachusetts adopted that very remedy in Diatchenko. The majority turns Montgomery on its head.

The majority also not only misreads dicta in Miller but violates other Supreme Court precedent in doing so. The majority acknowledges that the Court's fleeting reference to life imprisonment with the possibility of parole as a "lesser sentence" than life without the possibility of parole was dicta. See Miller, 567 U.S. at 465 ("State law mandated that each juvenile die in prison even if a judge or jury would have thought . . . a lesser sentence (for example, life with the possibility of parole) more appropriate."). Yet the majority elevates Miller's descriptive phrase "lesser sentence" into a federal rule under which parole eligibility alone, without a resentencing or a vacated conviction, creates a "new" sentence and then a "new" judgment under AEDPA. Not so. As the Supreme Court cautioned in Brown v. Davenport, 596 U.S. 118 (2022), "stray comments" in Supreme Court opinions may not be "stretch[ed] . . . beyond their context." Id. at 141. The majority stretches the word "lesser," which in context means no

- 38 -

more than that life imprisonment without the possibility of parole is a more severe punishment than life with the possibility of parole.

Nor does Graham v. Florida, 560 U.S. 48 (2010), help the majority. When Graham was 16 years old, he committed the offense of armed burglary and was later sentenced to life imprisonment. See id. at 53, 57. Because Florida had no parole system, Graham had no possibility of release. See id. at 57. Building on its Eighth Amendment jurisprudence, the Court held that juveniles may not be sentenced to life in prison without parole for a nonhomicide crime. See id. at 74-75. But Graham, like Miller, was about the substantive proportionality of punishments. Neither decision remotely suggested that a state's choice to make a juvenile not convicted of homicide eligible for parole works a "new" sentence, let alone a "new" judgment. The majority's focus on whether the Supreme Court has characterized two sentencing outcomes as "lesser" or "meaningfully different" is simply misplaced. Those are not the tests for determining a new judgment under AEDPA, and nothing in Graham or Miller bears on that question.

Burton v. Stewart, 549 U.S. 147 (2007), does not support the majority's faulty conclusion that the supposed "new" sentence created a "new" judgment under AEDPA. The Burton Court addressed only when a judgment becomes final for purposes of AEDPA's statute of limitations. See id. at 156. It held that the defendant's

limitations period did not begin until both his conviction and his sentence became final. See id. That holding does not address or resolve the distinct question of when a new judgment is created.

The actual holding of Burton is in fact contrary to the majority's reasoning. It held that the petition there was a "second or successive" petition. See id. at 152. Burton involved a petitioner who had been convicted in 1994, resentenced twice by a state court, and held in custody under a 1998 amended judgment. See id. at 149-52. He filed one federal habeas petition in 1998 while state review of his sentence was still pending, which was denied, and another in 2002 after the state courts had completed review of and rejected his sentencing claims. See id. at 151-52. The Court held that both petitions attacked the same 1998 amended judgment, rendering the second an unauthorized successive petition. See id. at 153. Burton argued to the Court that waiting to file his first petition until state review of his sentencing claims was complete would have cost him the chance to later challenge his conviction under AEDPA's one year statute of limitations. See id. at 156. The Court rejected this argument.

**IV.**

The majority has undercut the limitations on second or successive federal habeas petitions seeking review of state court murder convictions. In such challenges, "the road gets rockier." Rivers, 605 U.S. at 450 (quoting Banister v. Davis, 590 U.S. 504,

509 (2020)). "Before a federal court can address a petitioner's second or successive federal habeas filing on the merits, the incarcerated filer must clear strict procedural hurdles that [AEDPA] erects." Id. at 446. Through AEDPA, Congress divested federal district courts of jurisdiction to entertain second or successive collateral attacks by state prisoners. See 28 U.S.C. § 2244(b)(3)(A); see also Felker v. Turpin, 518 U.S. 651, 657-58, 664 (1996). Section 2244(b) -- AEDPA's gatekeeping provision -- requires a state prisoner to first obtain authorization from a panel of the appropriate federal court of appeals before filing a second or successive petition. See 28 U.S.C. § 2244(b)(3)(A)-(B); see also Rivers, 605 U.S. at 446, 450. The prisoner may not relitigate the merits of a previously denied claim, and he bears the burden of showing that any new claim falls within one of two narrow statutory exceptions. See 28 U.S.C. § 2244(b)(1), (b)(2)(A)-(B), (b)(3)(C); see also Rivers, 605 U.S. at 450.

The point of section 2244(b)'s restrictions, the Supreme Court has stated, "is to 'conserve judicial resources, reduc[e] piecemeal litigation,' and 'lend[] finality to state court judgments within a reasonable time.'" Banister, 590 U.S. at 512 (quoting Panetti v. Quarterman, 551 U.S. 930, 945-46 (2007)). "[M]any second-or-successive [federal habeas] petitions that would have survived . . . pre-AEDPA are now subject to dismissal under section 2244(b)(2)." Anderson v. Divris, 138 F.4th 625, 632 (1st

- 41 -

Cir. 2025); see also id. at 635 ("The 'finality of criminal convictions' would . . . be undermined, not only because a second round of federal habeas proceedings would necessarily call the subject criminal conviction back into question, but also because . . . the second round of proceedings could occur decades after the conclusion of the first." (quoting United States v. Barrett, 178 F.3d 34, 38 (1st Cir. 1999)).

These restrictions reflect "the principles of comity, finality, and federalism" that AEDPA seeks to advance. Shoop v. Twyford, 596 U.S. 811, 818 (2022) (quoting Williams v. Taylor, 529 U.S. 420, 436 (2000)); see also Banister, 590 U.S. at 512 (consulting "AEDPA's own purposes" in determining what qualifies as a "second or successive" petition under section 2244(b)). In cases interpreting AEDPA, the Supreme Court has recognized that "[f]ederal habeas review of state convictions frustrates both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights" and also "disturbs the State's significant interest in repose for concluded litigation." Harrington v. Richter, 562 U.S. 86, 103 (2011) (first quoting Calderon v. Thompson, 523 U.S. 538, 555-56 (1998); and then quoting Harris v. Reed, 489 U.S. 255, 282 (1989) (Kennedy, J., dissenting)); see also Shinn v. Ramirez, 596 U.S. 366, 391 (2022) ("Serial relitigation of final convictions undermines the finality that 'is essential to both the retributive and deterrent functions

- 42 -

of criminal law.'" (quoting Calderon, 523 U.S. at 555)).  AEDPA's limitations on habeas relief were intended to "ensure that federal habeas corpus retains its narrow role."  Shinn, 596 U.S. at 377.

The well-settled federal habeas principle that makes a state court's interpretation of state law binding on the federal courts serves the interests of finality, comity, and judicial efficiency.  See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.");  see also Hardy v. Maloney, 909 F.3d 494, 500 (1st Cir. 2018).

In enacting AEDPA, "Congress demanded [federal courts] give great deference to state court decisions such that [they] are 'bound by AEDPA's tight (to say the least) parameters' to grant habeas relief only in rare circumstances."  Strickland v. Goguen, 3 F.4th 45, 52 (1st Cir. 2021) (quoting Dorisca v. Marchilli, 941 F.3d 12, 14 (1st Cir. 2019)).  Congress's evident concern in AEDPA with comity and finality requires us to accept a state court's characterizations of its decisions.  See Hardy, 909 F.3d at 500.

**V.**

The majority's ruling also creates a number of circuit splits.  First, the majority misapplies the Eleventh Circuit's holding that "the judgment to which AEDPA refers is the underlying conviction and most recent sentence that authorizes the

- 43 -

petitioner's current detention." Cassidy v. Sec'y, Fla. Dep't of Corr., 119 F.4th 1336, 1344 (11th Cir. 2024) (additional emphasis added) (quoting Ferreira v. Sec'y, Dep't of Corr., 494 F.3d 1286, 1292 (11th Cir. 2007)). In Cassidy, a state court vacated part of the prisoner's original judgment and entered an amended judgment. See id. Nothing comparable occurred in Donovan's case.

Second, the majority's conclusion conflicts with other Eleventh Circuit holdings that "not every alteration to a sentence or conviction constitutes a new judgment." E.g., id. at 1343. In Patterson v. Secretary, Florida Department of Corrections, 849 F.3d 1321 (11th Cir. 2017) (en banc), the Eleventh Circuit held that an order excusing the petitioner from the chemical castration punishment incorporated into his original sentence did not constitute a new judgment. See id. at 1325-26. The court reasoned that "the Florida trial court never issued a new prison sentence" and that the order prohibiting castration "impos[ed] no sentence and g[ave] the [Florida] Department [of Corrections] no authority" to confine. Id. at 1326. So too with Donovan's grant of parole.

Third, the majority's reasoning contradicts the Ninth Circuit's holding, cited approvingly by the Third Circuit, that even "[t]o create a new [federal] judgment, a change to a sentence must be accompanied by a legal invalidation of the prior judgment." United States v. Buenrostro, 895 F.3d 1160, 1165 (9th Cir. 2018); see also In re Edwards, 98 F.4th 425, 433 (3d Cir. 2024). "Legal

- 44 -

invalidation" is the "essential criterion," not "the imposition of a new sentence." Buenrostro, 895 F.3d at 1165-66.

Fourth, the majority's refusal to honor Diatchenko's resolution of state law issues again places it squarely at odds with the Eleventh Circuit, as well as the law cited earlier in Part II. In Osbourne v. Secretary, Florida Department of Corrections, 968 F.3d 1261 (11th Cir. 2020), the Eleventh Circuit correctly determined that it must defer to a state court's characterization of a habeas petitioner's amended sentence as nunc pro tunc and that such a designation was "the determining factor as to whether the state court judgment is a 'new judgment' for purposes of [section] 2244(b)." Id. at 1266. The Eleventh Circuit then accurately held that "the propriety of labeling a Florida judgment 'nunc pro tunc' is a matter of state law." Id. at 1266 n.4; see also Cassidy, 119 F.4th at 1341-42 (applying Osborne).

Fifth, the majority enters a circuit split over what constitutes a "judgment" under AEDPA. The Supreme Court's decision in Magwood expressly left open whether "a petitioner who obtains a conditional writ as to his sentence [may] file a subsequent application challenging not only his resulting, new sentence, but also his original, undisturbed conviction." 561 U.S. at 342. The courts of appeal have divided over that question. Three circuits treat each conviction and each sentence as its own judgment, such

that a resentencing creates a new judgment only for the amended count and does not permit renewed challenges to an undisturbed conviction. See Suggs v. United States, 705 F.3d 279, 283-85 (7th Cir. 2013); Burks v. Raemisch, 680 F. App'x 686, 690-91 (10th Cir. 2017) (unpublished); In re Lampton, 667 F.3d 585, 589-90 (5th Cir. 2012).[12] The majority is simply wrong to discount Suggs and Burks for relying on pre-Magwood circuit precedent; those courts did so precisely because Magwood declined to resolve the issue. See Suggs, 705 F.3d at 284; Burks, 680 F. App'x at 691. By contrast, six other circuits treat the conviction and the sentence together as a single judgment and hold that a resentencing or amended judgment creates a new judgment that may be challenged in its entirety, including its unamended components. See, e.g., Johnson v. United States, 623 F.3d 41, 45-46 (2d Cir. 2010). The majority proceeds as though Donovan stands in the same posture as petitioners who received a new sentence and a new judgment from a state court. That premise is incorrect and reflects a basic misunderstanding of Diatchenko.

---

[12] To the extent the Fifth Circuit's unpublished decision in In re Greenwood, No. 19-60884, 2022 WL 501393 (5th Cir. Feb. 18, 2022), casts doubt on In re Lampton's holdings, the Fifth Circuit has held that unpublished decisions "are not binding on [the] court" but merely "persuasive." United States v. Sauseda, 596 F.3d 279, 282 (5th Cir. 2010).

- 46 -

## VI.

Simply put, this is Donovan's fourth attempt at post-conviction relief: his direct appeal became final in 1996, in 1997 he filed his first habeas petition, in 2013 he filed his Rule 30(b) motion in Massachusetts state court, and in 2020 he filed this action, originally seeking permission from this court to file a second or successive petition. Donovan has had more than "'one fair opportunity' to litigate the merits of [his] postconviction claims." Rivers, 605 U.S. at 450 (quoting Banister, 590 U.S. at 507). The majority mistakenly affords him another.

I would affirm the judgment of the district court. I respectfully dissent.